UNITED STATES of America, Appellee,

v.

GARCIA, Victor Monsalve, Palacio, Defendants.

Appeal of Victor MONSALVE, Defendant–Appellant.

No. 335, Docket 90–1243.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1990.

Decided Nov. 30, 1990.

See also 735 F.Supp. 484.

Steven D. Jacobs, New Haven, Conn., for defendant-appellant.

Theodore B. Heinrich, Asst. U.S. Atty., Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty., District of Connecticut, of counsel), for appellee.

Before Van Graafeiland and Walker, Circuit Judges, and Dearie, District Judge.*

PER CURIAM:

The defendant Victor Monsalve appeals from the refusal of the district court at his sentencing to reduce his offense level, pursuant to § 3B1.2 of the Sentencing Guidelines, by two levels for what he claims to have been his minor participation in the offense based upon his role as a courier in a drug transaction.

At 1:35 P.M. on October 31, 1989, an undercover officer with a joint federal, state and local drug enforcement task force met Monsalve's co-defendant, Oscar Garcia, outside the McDonald's restaurant near Interstate 95 in Fairfield, Connecticut to purchase a kilogram of cocaine for $23,000. The meeting was preceded by several telephone conversations between the officer

* United States District Judge for the Eastern District of New York, sitting by designation.

and Garcia during which the negotiations for the transactions were completed. Garcia drove alone to the meeting place. However, he was followed closely by a second car that contained a second co-defendant, John Palacio, and Monsalve. Garcia and Palacio left their cars and entered the undercover officer's car where the officer showed them the "buy money." Palacio returned to his car and conferred with Monsalve. When Palacio told Monsalve that he was afraid to deliver the package, Monsalve replied that somebody had to deliver it, so he would. Monsalve got out of his car carrying the package of cocaine, entered the undercover's car and handed the package to the undercover officer while Garcia counted the money. Moments later, Garcia, Palacio and Monsalve were arrested.

Thereafter all three defendants gave statements. Read together, the statements indicated that Garcia and Palacio knew each other previously but did not know Monsalve. Garcia had looked to Palacio to help him find a source for the cocaine and Palacio had contacted a source who directed Palacio to a Bridgeport shopping center. Garcia and Palacio went to the shopping center where they met Monsalve for the first time. Garcia was to receive $1000 and Palacio from $500 to $700 for the transaction. According to Monsalve, he was to be paid $150 to deliver the cocaine by the source whose name was "Wally". Monsalve, accompanied by Palacio, then drove his rental car with the cocaine under the back seat to the meeting place that Garcia had pre-arranged with the undercover officer.

On February 2, 1990, Monsalve entered a plea of guilty to a single count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. The presentence report, prepared by the probation office, calculated the Guideline range applicable to Monsalve to be 51–63 months imprisonment based on an adjusted offense level of 24 after a two level reduction for acceptance of responsibility. The report indicated no reduction pursuant to § 3B1.2 of the Guidelines for defendant's role in the offense.

At Monsalve's sentencing on March 30, 1990, his counsel argued for the first time that Monsalve should receive a two level downward adjustment for his "minor role" as a courier. The district court denied the reduction. The district court found that Monsalve's conduct was essential to the transaction "without which there was no deal." The district judge did not agree with Monsalve that Garcia was the "mastermind" of the conspiracy, nor did he agree that Monsalve was simply carrying out orders. He also discredited Monsalve's claim that "he did what he did for simply $150." The court imposed a prison sentence of 55 months. In doing so, the court stated: "I do that based on the nature of the offense, including the weight and purity of the cocaine, coupled with your closeness to the source of the cocaine."

Monsalve argues that the district court's ruling denying the minor role adjustment was clearly erroneous. He also argues that the district court's findings regarding Monsalve's role violated his fifth and sixth amendment rights because they were without support in the record and thus cannot support the court's ruling. We reject both arguments.

Monsalve claims minor role status based upon the following view of the facts: Garcia negotiated the transaction; Garcia arranged with Palacio to obtain the cocaine from a source known to the latter; Monsalve was given the package of cocaine by an individual known to him as "Wally" who instructed him to drive with Palacio to the meeting site; Monsalve delivered the package to the undercover officer whom he had never met; and Monsalve was to receive $150 for his part whereas Garcia and Palacia were to receive, respectively, $1000 and from $500 to $700 for theirs. In short, Monsalve asserts: "Garcia was the coordinator, Palacio the steerer and Monsalve the courier." Under such circumstances, Monsalve maintains, the district court's refusal to find that he was a "minor" participant pursuant to § 3B1.2 and to reduce his offense level by two levels was clearly erroneous.

■ To the extent that Monsalve claims that one who is simply a courier is automatically entitled to a § 3B1.2 minor role adjustment based on that status, we reject his argument. Whether a defendant may be accorded the benefit of a "minor" or "minimal" role adjustment under § 3B1.2 does not turn solely upon his status or his assigned task in the criminal enterprise. Such a cramped view of "role" is inconsistent with the prescription in the Guidelines that this determination is to be made not with regard to status in the abstract but rather with regard to the defendant's culpability in the context of the facts of the case. *See* § 3B1.2 Background Commentary, stating that the range of adjustments in § 3B1.2 are "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant" and that the determination "is heavily dependent upon the facts of the particular case."

Our sister circuits, when faced with the argument that the district court erred in not awarding courier status with a downward adjustment for a minor or minimal role in the offense, have similarly rejected it. *United States v. Paz–Uribe,* 891 F.2d 396, 399 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990); *United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989); *United States v. Williams,* 890 F.2d 102, 104 (8th Cir.1989); *United States v. Hewin,* 877 F.2d 3, 4–5 (5th Cir.1989); *United States v. White,* 875 F.2d 427, 434 (4th Cir.1989); *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

While in certain cases and on particular facts, a district court might conclude that a defendant courier was "substantially less culpable than the average participant" and thus make a downward adjustment pursuant to § 3B1.2, this conclusion is by no means mandated. Although the second Application Note accompanying this section of the Guidelines does state that a minimal participant downward adjustment would be appropriate, for example, "in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs," this comment does not automatically entitle a courier to a downward adjustment, it only suggests that some couriers may receive a reduction, based upon their culpability in light of the specific facts. *United States v. Buenrostro,* 868 F.2d at 138.

■ Couriers are indispensable to the smuggling and delivery of drugs and their proceeds. The culpability of a defendant courier must depend necessarily on such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise. *See* Application Note 1 to § 3B1.2 ("lack of knowledge or understanding of the scope and structure of the enterprise" indicative of minimal role). As the Guidelines comment, such a determination is heavily dependent upon the facts of the particular case as found by the district court. In the circumstances of this case, the district court's refusal to adjust downward pursuant to § 3B1.2 was not clearly erroneous.

■ Monsalve also claims that his fifth and sixth amendment rights were violated because the district court's findings at sentencing in support of its denial of the § 3B1.2 reduction were without support in the record. To the contrary, there was ample record support for the district court's findings. The court found Monsalve's participation to be essential to the transaction and, in concluding that Garcia was not the "mastermind," rejected Monsalve's claim that he was substantially less culpable than Garcia. This conclusion was justified based on the fact that Monsalve was personally entrusted with and ultimately delivered to the undercover officer, after Palacio became afraid to do so, cocaine worth $23,000. The court also discredited Monsalve's assertion that he was only carrying out orders and was only being paid $150 as compared to $1000 for Garcia and $500–700 for Palacio. In determining culpability, the district court "need not accept the defendant's self-serving account of his role in the drug organization," *United States v. Buenrostro,* 868 F.2d at

138. In imposing sentence, the district court emphasized "the nature of the offense, including the weight and purity of the cocaine" as well as Monsalve's "closeness to the source of the cocaine." It is the defendant's burden to establish by a preponderance of the evidence that his level of culpability entitles him to a minor role reduction. *United States v. Urrego–Linares*, 879 F.2d 1234, 1236 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Here the defendant failed to carry that burden and the district court's findings neither lacked record support nor were clearly erroneous.

Judgment affirmed.