**UNITED STATES of America, Appellee,**

v.

**Wayne BONDS, Defendant–Appellant.**

**No. 1113, Docket 90–1581.**

United States Court of Appeals,
Second Circuit.

Argued March 26, 1991.

Decided May 15, 1991.

David T. Grudberg, New Haven, Conn. (William F. Dow, III, Jacobs, Grudberg, Belt & Dow, P.C., of counsel), for defendant-appellant.

Andrew P. Gaillard, Asst. U.S. Atty., New Haven, Conn. (Richard N. Palmer, U.S. Atty., District of Connecticut, of counsel), for appellee.

Before OAKES, Chief Judge, TIMBERS and KEARSE, Circuit Judges.

PER CURIAM:

Wayne Bonds appeals from a judgment of the United States District Court for the District of Connecticut, Alan H. Nevas, *Judge*, convicting him of three counts of knowingly passing counterfeit currency in violation of 18 U.S.C. § 472. This appeal concerns the court's decision to sentence Bonds to concurrent eight-month terms of imprisonment, to be followed by a one-year term of supervised release. For the reasons set forth below, we affirm.

The district court initially set Bonds's offense level under the Sentencing Guidelines at nine, the base offense level for crimes involving less than $2,000 in counterfeit money. *See* U.S.S.G. § 2B5.1(a). Prior to sentencing, the Government urged the court to increase Bonds's offense level pursuant to section 3C1.1 of the Guidelines, which at the time provided for a two-level upward adjustment if the defendant "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense."[1] Bonds op-

---

1. References to the Guidelines are to the version "in effect on the date the defendant [was] sentenced." 18 U.S.C. § 3553(a)(4) (1988). Since imposition of Bonds's sentence, however, a new version of section 3C1.1, with slightly different

posed the Government's request, and further argued that he should be given a two-level reduction in sentencing pursuant to section 3E1.1 of the Guidelines, on the ground that he had accepted responsibility for his offense.

After hearing argument, the court concluded that two factors warranted an upward adjustment for obstruction of justice: (1) Bonds's change in appearance prior to his response to a grand jury photograph subpoena; and (2) Bonds's testimony at trial, which the court characterized as perjurious. As a result, it added two levels to Bonds's offense level under section 3C1.1. In addition, it denied Bonds's motion for a two-level reduction under section 3E1.1. This appeal followed.

## DISCUSSION

### 1. Obstruction of Justice

■ Whether the facts on which the district court relied to increase Bonds's offense level under section 3C1.1 constitute "obstruction of justice" is a question of law subject to *de novo* review. *See United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991). Applying this standard, we do not believe the record was sufficient to support the ruling that Bonds's change in appearance constituted a deliberate attempt to obstruct justice. However, because we agree with the district court that Bonds's trial testimony was perjurious, we affirm the two-level obstruction of justice upgrade under section 3C1.1.

#### a. Change in Appearance

■ In imposing the section 3C1.1 upgrade, the district court relied in part on the fact that Bonds changed his appearance after being served with a grand jury subpoena requesting him to submit to fingerprints and photographs. The purpose of obtaining the photographs was to determine if William Cavanaugh, a bartender who had allegedly received counterfeit currency from Bonds, could identify Bonds from a photospread. According to the Government, at the time that Bonds was

served with the subpoena, he had distinctively bushy dark hair, was unshaven, wore glasses, and was dressed in dirty clothes. When Bonds appeared for the photo session, however, he had closely cropped hair, was clean shaven, had no glasses, and was dressed in a business suit. The court concluded that Bonds had changed his appearance in a deliberate attempt to obstruct justice.

In order to impose a sentencing enhancement under section 3C1.1, the court must find that the defendant "consciously act[ed] with the *purpose* of obstructing justice." *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990) (emphasis in original). We find insufficient support in the record for the district court's conclusion that Bonds changed his appearance for the purpose of obstructing the investigation against him. It is natural that an individual served with an official document calling for him to appear before federal authorities will attempt to make himself more presentable. Indeed, getting a haircut, shaving, putting on a suit, and even replacing one's glasses with contact lenses are probably routine practices for both litigants and attorneys who appear before this and other courts. The subpoena, we note, did not explicitly instruct Bonds *not* to change his appearance. Rather, all it did was order him to bring with him before the grand jury "fingerprints and photographs" and "to provide the requested items" to a named Special Secret Service agent. These statements, however, were in no way an implicit instruction to keep his appearance intact. Absent something additional in evidence, therefore, there was an insufficient basis for the district court's conclusion that the alterations in Bonds's dress and grooming were motivated by anything other than a desire to make himself more presentable.

■ The Government suggests that Bonds's change in appearance is analogous to "producing or attempting to produce an altered, forged, or counterfeit document or record during ... any ... judicial proceeding," actions that would support the imposition of an obstruction of justice upgrade.

language and additional commentary, took ef-      fect.

*See* U.S.S.G. § 3C1.1, Application Note 1(c). An appearance at a photo session, however, is quite different from producing documents pursuant to a subpoena *duces tecum*. Documents are fixed records, which are not normally altered or fabricated; thus, alteration of documents is itself evidence of an intent to deceive the court. By contrast, an individual's appearance often changes, whether by choice or by force of circumstances. As such, without some other evidence of an intent to deceive, a change in appearance alone will generally be an insufficient basis for an obstruction of justice upgrade.

### b. Trial Testimony

■ Under the sentencing Guidelines, false trial testimony is an appropriate basis for imposing an obstruction of justice upgrade. *See* U.S.S.G. § 3C1.1, Application Note 1(c); *see also United States v. Matos*, 907 F.2d 274, 275–76 (2d Cir.1990) (upholding imposition of two-level upward adjustment where defendant offered testimony that was flatly contradicted by the record).[2] Here, the district court concluded that Bonds deliberately lied to the jury when he denied knowing that the money he had distributed was counterfeit. On appeal, Bonds concedes that this denial "might conceivably be considered 'suspect,' " Brief for Appellant at 14, but he argues that, because "suspect testimony and statements should be evaluated in a light most favorable to the defendant," U.S.S.G. § 3C1.1, Application Note 2, the court's conclusion that his denials of knowledge rose to the level of willful perjury was erroneous. We disagree.

■ A sworn witness is guilty of perjury when he makes statements that he knows to be false. *See* 18 U.S.C. § 1621 (1988); *see also Bronston v. United States*, 409 U.S. 352, 357, 93 S.Ct. 595, 599, 34 L.Ed.2d 568 (1972). Here, by finding Bonds guilty of *knowingly* distributing counterfeit money, the jury necessarily determined that Bonds knew that the money he had distributed was counterfeit—that is, unless the jury's verdict was unsupported by the evidence, in which case, of course, the remedy would be to reverse Bonds's conviction, not simply to disallow the two-level upgrade in sentencing. Because there is no indication that the judgment of conviction was invalid, it is clear that Bonds's testimony was objectively false. Moreover, inasmuch as the testimony concerned Bonds's own state of mind—a matter about which he was peculiarly knowledgeable—it is reasonable to conclude that Bonds was aware, at the time of testifying, that his statements were untrue. Accordingly, we affirm the two-level adjustment to Bonds's offense level.

■ This holding, however, should not be interpreted as authorizing sentencing judges to impose obstruction of justice upgrades whenever a defendant has testified on his own behalf. Where, as here, the defendant's testimony relates to an essential element of his offense, such as his state of mind or his participation in the acts charged in the indictment, the judgment of conviction necessarily constitutes a finding that the contested testimony was false. Accordingly, assuming that the evidence also persuades the sentencing judge that the defendant knew, at the time of testifying, that the statements to which he testified were untrue, a section 3C1.1 enhancement would be appropriate. Where, by contrast, the testimony relates to matters that do not, in themselves, determine the defendant's guilt or innocence, the jury could reasonably return a verdict of guilty even if it believes that the defendant's testimony was truthful. Under those circumstances, a judgment of conviction alone would ordinarily be an insufficient basis for imposing a section 3C1.1 upgrade.

### 2. Acceptance of Responsibility

■ Under section 3E1.1 of the Guidelines, a defendant is entitled to a two-level reduction of his offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for

---

**2.** Because "[t]here is no protected right to commit perjury," *United States v. Grayson*, 438 U.S. 41, 54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978), penalizing a defendant at the sentencing stage for false statements made at trial does not violate the defendant's right to testify on his own behalf. *See id.*

his criminal conduct." Whether a defendant has accepted responsibility is a matter as to which the district court's determination may not be disturbed unless it is " 'without foundation.' " *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir.1990) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)). Because the district court's conclusion that Bonds had not accepted responsibility was not without foundation, we affirm the denial of the section 3E1.1 reduction.

The Application Notes to section 3E1.1, as they existed at the time of sentencing, provided that "[a]n adjustment under this section is not warranted where a defendant perjures himself." U.S.S.G. § 3E1.1, Application Note 4. Thus, our conclusion that Bonds perjured himself at trial would alone support the district court's refusal to award an acceptance of responsibility reduction under section 3E1.1.[3] Even if Bonds had not perjured himself, however, we would still affirm the denial of the section 3E1.1 reduction, because Bonds continues to deny an essential element of the offense—that he knew that the currency he distributed was counterfeit. In our view, his concession that he "should have known" that the currency was not genuine does not constitute the sort of acceptance of responsibility that would warrant a section 3E1.1 reduction. *See United States v. Moskowitz*, 883 F.2d 1142, 1155 (2d Cir. 1989) (acknowledging that going to trial does not preclude an acceptance of responsibility reduction, but concluding that a defendant's continued assertions that he was not responsible for the most serious conduct for which the jury convicted him war-

rants the denial of a section 3E1.1 adjustment).[4]

Accordingly, the judgment of the district court is affirmed.

---

**3.** Under the current version of the Guidelines, conduct resulting in an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," but is not an absolute bar to a section 3E1.1 reduction. *See* U.S.S.G. § 3E1.1, Application Note 4 (1991).

**4.** Bonds argues that the court's denial of his section 3E1.1 reduction was motivated in part by his refusal to disclose the source of the counterfeit money. Because his disclosure of the source of the money could have been used against him in other prosecutions, Bonds main-

tains, the court's reliance on his silence constituted an impermissible burden on his Fifth Amendment right not to incriminate himself with respect to other crimes. *See United States v. Oliveras*, 905 F.2d 623, 628 (2d Cir.1990) (holding that a court may not base the denial of a section 3E1.1 reduction on a defendant's refusal to accept responsibility for other crimes). Based on our review of the record, however, we believe the court's references to Bonds's failure to disclose the source of the money was not essential to its denial of a section 3E1.1 reduction.