**UNITED STATES of America**

**v.**

**Charles SHONUBI, Defendant.**

**No. CR 92–0007.**

United States District Court, E.D. New York.

Oct. 9, 1992.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y., by Karen Popp, for U.S.

Wayne Wiseman, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Found guilty of importation and possession of heroin with the intent to distribute it, defendant objects to Probation's Guideline calculation penalizing him for committing perjury at his jury trial. For reasons stated below his contention must be sustained even though he repeatedly told material untruths.

### I. FACTS

Defendant is 35 years old and a citizen of Nigeria. His wife and infant child live with him in the United States. On December 10, 1991 he was detained by United States Customs officials at John F. Kennedy Airport upon arriving on a flight from Holland. He consented to an x-ray examination that revealed foreign bodies in his digestive tract. Following his arrest, he passed 103 balloons containing a total of 427.4 grams of heroin. Defendant refused the government's pretrial offer of a plea agreement that probably would have resulted in a sentence of about 30 months imprisonment.

At trial, the government proved that defendant used two passports to travel between the United States and Nigeria eight times during 1990 and 1991. Employed during these years as a toll collector at the George Washington Bridge, he was fired for unexcused absences caused by his frequent travel. His $12,000 annual salary would not have covered the cost of his trips.

His testimony in his own defense that he travelled between Nigeria and the United States only four times and that the trips did not involve drugs was clearly untrue. The jury rejected it when they found him guilty.

Probation used the 427.4 grams found on the last trip and the fact that he had made seven other trips to estimate that defen-

dant had imported a total of at least 3419.2 grams of heroin. Based on his crimes and this quantity of heroin, the Guidelines dictate a base offense level of 34. A two-level increase was recommended for obstruction of justice because of defendant's lies at trial. *See* Guideline § 3C1.1. Defendant has no criminal history. Using Probation's calculation, the Guidelines dictate a sentence of 188 to 235 months.

## II. OBSTRUCTION OF JUSTICE ENHANCEMENT

### A. *Law*

Guidelines § 3C1.1 directs: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The commentary to the Guidelines points to the instance of a defendant "committing ... perjury" as an example of the type of conduct to which the enhancement applies. Guidelines § 3C1.1 comment 3.

The Court of Appeals for the Second Circuit has held that false trial testimony is an "appropriate" basis for a § 3C1.1 enhancement if the defendant's testimony relates to an essential element of the crime for which the jury ultimately convicts him. *United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991); *see also United States v. Matos*, 907 F.2d 274, 275–76 (2d Cir.1990) ("there is no constitutional bar to·an enhanced sentence" under § 3C1.1 for false testimony of defendant at trial).

The question whether uniform application of a § 3C1.1 enhancement for false testimony violates a defendant's constitutional rights is troubling. The Fourth Circuit, while noting that consideration of a defendant's lies on the stand was constitutionally permissible in the highly discretionary pre-Guidelines era, *see United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), has ruled that the "rigidity" of Guideline § 3C1.1 renders the enhancement "an intolerable burden on the defendant's right to testify in his own behalf." *United States v. Dunnigan*, 944

F.2d 178, 185 (4th Cir.1991), *cert. granted,* — U.S. ——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992).

The Second Circuit avoided the constitutional issue and justified its finding that application of § 3C1.1 to trial testimony does not violate a defendant's constitutional rights by relying on the Supreme Court's pre-Guidelines holding, in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), that a defendant *may*, but need not be, penalized at sentencing for making false statements at trial. *United States v. Bonds*, 933 F.2d 152, 155 n. 2 (2d Cir.1991). The Court in *Grayson*, mindful of the pressures inherent in a rigid rule such as the one now contained in § 3C1.1, was also careful to limit its holding. It stated, "Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false." *Grayson*, 438 U.S. at 55, 98 S.Ct. at 2618.

The Second Circuit has made clear that § 3C1.1 should not operate to relieve the sentencing court of its duty independently to evaluate the defendant's conduct. An adverse jury verdict alone would be an insufficient basis for a § 3C1.1 enhancement. *See United States v. Cunavelis*, 969 F.2d 1419, 1423 (2d Cir.1992) (judge could not rely solely on his pretrial finding that defendant had lied at suppression hearing).

The Guideline commentary states that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." Guideline § 3C1.1 comment 1. The Second Circuit has treated this comment as imposing a higher burden of proof with respect to perjury by the defendant than the ordinary preponderance standard at sentencing. *See United States v. Matos*, 907 F.2d 274, 276 (2d Cir.1990) (judge must resolve in favor of defendant all conflicts about which judge, after weighing evidence, has no "firm conviction").

■ In deciding whether a defendant who lied on the stand qualifies for a § 3C1.1 enhancement, the sentencing judge must make the independent factual inquiry that responsible exercise of discretion demands. The trial court must be sensitive to pressures, both psychological and legal, that may have operated upon the particular defendant.

■ The need to utilize § 3C1.1 enhancements to discourage perjurious testimony by a defendant is mitigated by two factors. First is the danger of punishing the exercise of constitutionally guaranteed choices not relevant in sentencing. This danger is heightened where, as here, the defendant faces a much greater sentence than he ordinarily would for a single importation of a relatively small quantity of narcotics (due to the operation of the Guidelines with respect to defendant's seven other trips). See United States v. Wise, 976 F.2d 393 (8th Cir.1992) (en banc) ("[I]n certain instances a sentence may so overwhelm or be so disproportionate to the punishment than would otherwise be imposed absent the sentencing factors mandated by the Guidelines that due process concerns must be addressed."). Second is the availability to the government of other means for deterring and punishing false testimony. See 18 U.S.C. § 1621 (crime of perjury).

■ Where the defendant arguably testifies to what he could not at the moment bring himself to disbelieve, an obstruction of justice enhancement for perjury is not warranted. There may be cases in which the defendant clearly tells untruths on the stand yet is so agitated by the effect of his being caught and by the long prison term he faces, that he appears to be in a kind of sustained shock, having convinced himself of his innocence. See Irwin A. Horowitz & Thomas E. Willging, The Psychology of Law 150–51 (1984) ("being participant, victim, or witness in a crime is ... highly stressful"); Lewis Carroll, Alice in Wonderland & Through the Looking–Glass 168 (MacMillan Co. ed. 1930) (King of Hearts said, "Give your evidence, and don't be nervous, or I'll have you executed."). If he does not believe he is telling an untruth as he testifies he is not guilty of perjury. See 18 U.S.C. § 1621 (mens rea for crime of perjury is "willfully").

Criminal defendants, subject as they are to the stress of a jury trial and the weight of potential punishment, do not always behave like the cold calculating liar hypothesized by Guideline § 3C1.1. They are people subject to human foibles and the weaknesses of the human mind. See Krist v. Eli Lilly & Co., 897 F.2d 293, 297 (7th Cir.1990) ("The only warrant for our [recollections] is certitude, and certitude is not a reliable test of certainty."); James Marshall, "Evidence, Psychology, and the Trial: Some Challenges to the Law," 63 Colum.L.Rev. 197, 197 (1963) ("For the law, the basic problem of ascertaining truth does not arise so much from the villainy of perjurers and suborners of perjury as from the unreliability of personal observation."). In the language the Court of Appeals for this circuit in Matos, the sentencing court is not likely in such cases to be left with the "firm conviction" that the defendant had the necessary mens rea to commit perjury at his trial. United States v. Matos, 907 F.2d 274, 276 (2d Cir.1990).

No rigid formula devised by a distant Sentencing Commission on the basis of statistics can fully account for this human frailty of the mind and psyche. The generalized rule must bow to the uniqueness of the individual in sentencing. Because even criminals are humans entitled to be treated with dignity, human judges rather than computers must sentence them.

Even if the court is satisfied that the defendant deliberately perjured himself, the two-point enhancement for perjury might not be appropriate. Use of a § 3C1.1 enhancement every time a jury convicts a defendant who maintains his innocence on the stand remains a troubling prospect. The obstruction penalty could become "the commonplace punishment for a convicted defendant who has had the audacity to deny the charges against him." United States v. Dunnigan, 944 F.2d 178, 183 (4th Cir.1991), cert. granted, — U.S. ——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992); see also United States v. Padron,

938 F.2d 29, 30 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 978, 117 L.Ed.2d 142 (1992) (not foreclosing possibility that judge's warning to defendant in advance of his intention to apply § 3C1.1 to false testimony might chill exercise of right).

Wooden application of § 3C1.1 would amount to punishment for perjury by summary bench trial. Were the defendant to be indicted for perjury, as he could be, he would be entitled to a full jury trial requiring proof beyond a reasonable doubt. Under § 3C1.1 the defendant receives a summary bench trial with proof by something more than a preponderance of the evidence but less than proof beyond a reasonable doubt, without the protections of the Federal Rules of Evidence. Fed.R.Evid. 1101(d)(3). Surely Congress did not desire to remove constitutional protections when it adopted a sentencing program intended to reduce disparities.

### B. *Application of Law to Fact*

■ Defendant swallowed the drugs he imported. He then asserted at trial that he believed in his own innocence. In these circumstances, defendant clearly lied willfully. Any notion that he deluded himself as to his own innocence would be fanciful.

Nonetheless, defendant does not merit additional punishment for his lies at trial. His persistence in proclaiming and testifying on behalf of his innocence resulted in a jury trial where it was revealed for the first time that the single smuggling event he was charged with committing was part of a longstanding pattern of related drug smuggling episodes. Until defendant insisted on exercising his rights, the government was prepared to dispose of his case with a plea bargain that would have resulted in a sentence of about 30 months in prison.

Even without the obstruction enhancement the effect of the revelations at defendant's trial is a Guideline sentence of 151 to 188 months in prison—some ten years more than he would otherwise have received. The Guidelines' predilection for incarceration should be satisfied by adding ten years

for defendant's exercising his right to a trial and to testify. Penalizing defendant additionally for what amounts to the same conduct (the maintenance of his own defense) would be inappropriate and cruel.

■ As explained in this court's opinion in *United States v. Concepcion,* 795 F.Supp. 1262, 1275–1282 (E.D.N.Y.1992), the sentencing court may determine in some cases that the objectives Congress has mandated for sentencing, *see* 18 U.S.C. §§ 3551, 3553, are not served by mechanical application of the Guidelines to the exclusion of other statutory factors. This observation is particularly relevant where a rigid reading of the Guidelines might lead the court to tread upon a defendant's due process rights. *See United States v. Wise,* 976 F.2d 393 (8th Cir.1992) (en banc).

In addition, scarce prison resources would be wasted by adding further time to this defendant's already lengthy sentence. *See* 28 U.S.C. § 994(g) ("The sentencing guidelines ... shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons...."); Sentencing Reform Act of 1984, Pub.L. No. 98–473 § 239, 98 Stat. 2039 (no longer in effect) (until Guidelines took effect sentencing judges were to take account of "impending crisis in prison over-crowding" and "ensure that scarce prison resources" would be available to house violent and serious offenders). The court exercises its discretion in declining to apply Guideline § 3C1.1. Eliminating the two-point increase for obstruction, defendant's proper offense level is 34.

### III. UNTENABLE CONTENTIONS

#### A. *Aggregating Drugs*

■ Defendant objects to the means by which Probation calculated the quantity of the heroin. All facts relevant to the sentence must be considered, without regard to their admissibility at trial or legal relevance to the charges in the indictment. *See* 18 U.S.C. § 3553(a) (court shall consider, *inter alia,* "nature and circumstances of the offense and the history and characteristics of the defendant"); 18 U.S.C.

§ 3661 ("no limitation" shall be placed on information about defendant and defendant's conduct which court may receive in sentencing). The Guidelines direct that the base offense level be determined from "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Guideline § 1B1.3. The practice of aggregating drug quantities for sentencing purposes where the defendant is found to have engaged in repeated and related drug transactions is appropriate since it reveals something about defendant's danger to society. *See* Guideline § 1B1.3 comment 2; *United States v. Colon*, 961 F.2d 41, 43 (2d Cir.1992).

An overwhelming preponderance of the evidence at both the trial and the *Fatico* hearing establishes that defendant did import at least 3419.2 grams of heroin. His numerous unexplained trips, as well as his economic situation, his absences from work and the pattern of his travel, establish that the other trips involved narcotics importation. Probation's calculation of his base offense level is correct.

### B. *Minimal Participant*

 Finally, defendant complains that he deserves a reduction of his base offense level by four levels for being a "minimal participant" in this criminal activity. Guideline § 3B1.2. Defendant was not a "minimal" or even a "minor" participant.

A preponderance of the evidence at his trial established that defendant imported large quantities of heroin on eight occasions, using two passports. Defendant was not the foolish, occasionally even unwitting, drug mule who frequently comes before this court. He regularly and systematically engaged in the business of narcotics trafficking between Nigeria and the United States. He deserves no leniency for being a "minor" or "minimal" criminal.

That this factor was revealed because he insisted on a trial is not a matter that defendant can justly complain of. Having insisted that the government produce evidence, he cannot ask the court to ignore that proof.

## IV. CONCLUSION

Based upon an adjusted offense level of 34, the Guidelines require a sentence of 151 to 188 months. Defendant is sentenced to 151 months in prison followed by five years of supervised release. He shall pay a $100 assessment. Because defendant had the poor judgment to go to trial, leading to a finding that he imported eight times the amount he was arrested for, his offense level is high. A sentence at the lower end of the level–34 range is ordered. Anything higher would be unnecessarily destructive of defendant's life and that of his family and would unduly burden taxpayers with the cost of excessive imprisonment.

SO ORDERED.