**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**Charles O. SHONUBI, Defendant–
Appellant–Cross–Appellee.**

**Nos. 1307, 1433, Dockets 92–1607, 92–1653.**

United States Court of Appeals,
Second Circuit.

Argued March 30, 1993.

Decided June 30, 1993.

David Secular, New York City, for defendant-appellant-cross-appellee.

Karen A. Popp, Asst. U.S. Atty. E.D.N.Y., Brooklyn, NY (Susan Corkery, Asst. U.S. Atty., Mary Jo White, U.S. Atty. E.D.N.Y., Brooklyn, NY, of counsel), for appellee-cross-appellant.

Before: OAKES, NEWMAN and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Charles O. Shonubi was arrested for importing 427.4 grams of heroin into the United

States from Nigeria. He refused a plea bargain that might have resulted in a sentence of 30 months (two and one-half years) imprisonment, and instead demanded a jury trial. Unfortunately for him, not only was he found guilty of importing the 427.4 grams but the government also proved that he made seven additional trips to Nigeria for the purpose of importing heroin. The district court then found that Shonubi lied throughout his trial testimony. His sentence was based on his importing a total of 3419.2 grams of heroin, and he was committed to over 12½ years imprisonment. Shonubi appeals the sentence he received in the October 6, 1992 judgment of the United States District Court for the Eastern District of New York (Weinstein, J.). The government cross-appeals from the trial court's refusal to enhance appellant's sentence after finding that he lied during the trial and sentencing hearing.

The critical question presented on this appeal is whether an inference drawn by the sentencing court that the quantity of drugs seized from defendant after his last visit abroad may simply be multiplied by the number of such visits to obtain proof of the quantity of drugs defendant imported. Such surmise will not, of course, substitute for specific proof of quantity; nor does it constitute proof by the requisite preponderance of the evidence.

Another question posed on this appeal is how to treat for sentencing purposes a defendant's willful lies. The situation before us is similar to that of a person who is caught red-handed by the police inside a closed building late at night with cash from a vending machine and later swears at trial that he was not the burglar. In the instant case, appellant was intercepted on entry into this country with a number of heroin-filled balloons, which he had swallowed and were in his stomach. While detained, he passed the balloons. At trial, he swore the heroin had not come from his body. Genuine self-delusion may well be a rare occurrence, but the law does not deny the possibility of its existence. In any event, the state of a defendant's mind, his *mens rea*, is always a matter for the trial court to determine. If a defendant's lies are found to be willful, an obstruction of justice enhancement must be imposed at sentencing.

## BACKGROUND

On December 10, 1991 Shonubi returned to the United States from a trip to Lagos, Nigeria. Upon arriving at JFK International Airport in New York he was interviewed by U.S. Customs Inspector Jules Persad. During the interview Inspector Persad noticed that Shonubi, a citizen of Nigeria but a resident of New Jersey, had made five trips to his homeland in the previous 15 months. When the inspector asked Shonubi the purposes of these trips, he gave inconsistent explanations in a nervous manner. Shonubi told the inspector, for example, that he had been married on his last trip, but a few moments later said he had just visited Nigeria because his mother was ill.

At this point the inspector suspected appellant of drug trafficking and asked him to consent to an X-ray examination. Shonubi agreed. An X-ray taken at the customs medical center revealed the presence of foreign bodies in Shonubi's digestive tract. Detained for the night, he passed 103 balloons containing a net weight of 427.4 grams of heroin worth $44,000. After his arrest for importing and possessing this quantity of heroin, appellant told Special Agent Amanda Jackson of the Drug Enforcement Administration that he owned the heroin and that he had bought it in Nigeria from "an ordinary man on the street".

He decided to stand trial rather than plead to the charges and—against the advice of his attorney—testified in his own defense. Appellant swore that the heroin-filled balloons had not come from his body. On cross-examination, the prosecutor asked him how many trips he had made to Nigeria and whether he had used more than one passport. Shonubi admitted making four trips, but denied using different passports. The prosecution introduced evidence showing that the date stamps on his passport conflicted not only with his account of when he had traveled, but also with his attendance records at work, leading to the inference that he had used more than one passport. Shonubi's work records showed absences for eight

trips, but his passport recorded only five journeys. Appellant's explanations of his reasons for travel contradicted earlier stories that he had given to customs agents and to his employer. He was unable to explain how he could afford eight round-trip airplane tickets costing at least $900 each on the $12,000 salary he earned as a toll collector on the George Washington Bridge. The jury convicted Shonubi of heroin importation and possession with intent to distribute in violation of 21 U.S.C. §§ 952 and 841 (1988).

He was sentenced on October 1, 1992 before Judge Weinstein. Shonubi took the stand again at the sentencing hearing and stated that he made only four trips to Nigeria and did not import heroin. The district court discredited this testimony and found that the proof at trial showed appellant made at least eight trips to Nigeria between September 1990 and December 1991. The court further found that he imported heroin on each occasion and therefore multiplied the number of trips by 427.4 grams—the quantity of heroin recovered from his body on December 10, 1991—to establish that Shonubi imported a total of 3419.2 grams of heroin. This quantity of drugs translated into a base offense level of 34. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c) (Nov. 1992).

Because appellant was in Criminal History Category I, the applicable sentencing range was 151 to 188 months imprisonment. The district court credited Shonubi's post-arrest statement that he owned the drugs and refused to find that he was a minor or minimal participant in drug trafficking, which would have reduced his sentence by two to four levels. *See id.* § 3B1.2. Even though specifically finding that appellant lied throughout the trial and the sentencing hearing, the district court declined to enhance his sentence by two levels for obstruction of justice. *See id.* § 3C1.1. Shonubi was sentenced to a total of 151 months imprisonment, five years supervised release, and a $100 special assessment. *United States v. Shonubi*, 802 F.Supp. 859, 864 (E.D.N.Y.1992). This appeal with respect to appellant's sentence followed. We reverse and remand for resentencing.

## DISCUSSION

### I Obstruction of Justice

■ We discuss the cross-appeal first. The government contends the district court erred in refusing to enhance Shonubi's sentence for obstruction of justice. At sentencing, the government must prove disputed factual allegations by a preponderance of the evidence. *United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). A sentencing court's resulting factual findings may be disturbed on appeal only when they are clearly erroneous. *United States v. Pimentel*, 932 F.2d 1029, 1031 (2d Cir.1991). But whether the facts found here constitute obstruction of justice is a question of law subject to *de novo* review. *See United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991).

The Sentencing Guidelines provide for a two-level increase in offense level where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1. This enhancement applies to a defendant who commits perjury. *Id.* at comment. (nn. 1 & 3). Perjury is defined by statute as willfully giving false testimony under oath concerning a material matter. 18 U.S.C. § 1621 (1988). In the case at hand the trial court found that "defendant clearly lied willfully" during his sworn trial testimony. *Shonubi*, 802 F.Supp. at 863. Nonetheless, in an exercise of its discretion it refused to enhance Shonubi's sentence under § 3C1.1 because it considered increasing the already lengthy incarceration "inappropriate and cruel." *Id.*

■ Our consideration of this issue is informed by a recent Supreme Court case addressing it. We should add in fairness to the district court judge that this controlling precedent was argued and decided in the Supreme Court several months *after* the district court had imposed sentence on Shonubi. In a unanimous decision in that case the Court held that district courts generally lack discretion in this area of the law and that "[u]pon a proper determination that the ac-

cused has committed perjury at trial, an enhancement of sentence is *required* by the Sentencing Guidelines." *United States v. Dunnigan*, —— U.S. ——, ——, 113 S.Ct. 1111, 1119, 122 L.Ed.2d 445 (1993) (emphasis added). A "proper determination" by the district court ensures that defendants are not penalized merely for taking the stand, which otherwise would raise troubling constitutional issues. The fact that a defendant who testifies at trial is disbelieved by the jury and convicted is not alone sufficient evidence of perjury to bring about sentence enhancement because "an accused may give inaccurate testimony due to confusion, mistake or faulty memory." *Id.* at ——, 113 S.Ct. at 1117.

The Supreme Court explained that in order to apply § 3C1.1 a sentencing court must carefully review the evidence and "make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition . . . ." *Id.; see also United States v. Cunavelis*, 969 F.2d 1419, 1423 (2d Cir.1992). In making that determination the allegedly perjurious statements must be evaluated "in a light most favorable to the defendant." U.S.S.G. § 3C1.1, comment. (n. 1); *see also United States v. Matos*, 907 F.2d 274, 276 (2d Cir.1990). Although separate and clear findings on each element of perjury are preferred, a general finding of obstruction that tracks those factual predicates necessary to support a finding of perjury will suffice. *See Dunnigan*, —— U.S. at ——, 113 S.Ct. at 1117; *see also United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991) (holding that where defendant's testimony relates to an essential element of the offense, judgment of conviction necessarily constitutes a finding that testimony was false). A separate perjury prosecution is not required. *Dunnigan*, —— U.S. at ——, 113 S.Ct. at 1118.

■ Here the trial court made two sets of findings regarding Shonubi's testimony. After evaluating his trial testimony, it stated that the "defendant lied throughout his testimony." Judge Weinstein reviewed the material points where he credited prosecution witnesses and discredited Shonubi's contrary assertions: voluntary consent to the X-ray, the presence of heroin balloons in Shonubi's body, the use of more than one passport to make more than five trips to Nigeria, and the smuggling of heroin. The trial court also rejected the possibility that Shonubi was mistaken or confused when he testified at trial and concluded "[a]ny notion that he deluded himself as to his own innocence would be fanciful." *Shonubi*, 802 F.Supp. at 863. After evaluating appellant's testimony again at the sentencing hearing, the district judge found that he lied about some of the same material matters. After reviewing the record, we cannot say these findings were clearly erroneous.

■ These specific findings satisfy the elements defining perjury because Shonubi's false testimony concerned material matters and was given with a willful intent to provide false testimony, not on account of confusion, mistake, or faulty memory. That is to say, appellant lied willfully about importing heroin without there being any extenuating circumstances. While the district court entertained the possibility that Shonubi may have so testified because he convinced himself in a state of shock as to his own innocence, it ultimately found that such a notion would be fanciful. *See* 802 F.Supp. at 863. Hence, even viewing Shonubi's claimed state of denial in a light most favorable to him, such denial in the instant circumstances is nothing but an unreal illusion and will not serve as a reason to deny sentence enhancement. *See, e.g., Matos*, 907 F.2d at 276 (§ 3C1.1 enhancement appropriate where "district court specifically found that appellant's testimony contained a 'basic and bald untruth on an important aspect of the [suppression] motion' "). The district court therefore was required to enhance Shonubi's sentence by two levels under § 3C1.1, and it erred as a matter of law in declining to do so.

## II Drug Quantity

We turn now to Shonubi's direct appeal. He contends it was error to base his sentence on the importation of 3419.2 grams of heroin because the government failed to prove how much heroin, if any, he smuggled into the United States during each of his trips to Nigeria. The district court held that an

"overwhelming preponderance of the evidence" supported Shonubi's increased sentence. *Shonubi,* 802 F.Supp. at 864.

■ The base offense level for drug trafficking under the Sentencing Guidelines depends upon the amount of drugs involved. U.S.S.G. § 2D1.1(c). Determining drug quantity is a task for the sentencing court, *United States v. Olvera,* 954 F.2d 788, 791 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992), and in performing that task it is not bound by jury findings or evidence presented at trial, but may consider any reliable proof. *See United States v. Madkour,* 930 F.2d 234, 237 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991). Yet, when examining such proof, the sentencing court may only rely on drug amounts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

■ The "course of conduct" and "common scheme" concepts are distinct. The former is broader because "same course of conduct" does not require that a connection be established among the drug trafficking occasions in terms of participants or overall plan. To determine whether a defendant has been engaged in the same "course of conduct," a sentencing court looks to see if the defendant has been engaged over time in an identifiable pattern of criminal conduct. In deciding whether a behavior pattern has been established such factors as the nature of defendant's acts and how frequently the same sorts of acts have been repeated by him must be examined. *Perdomo,* 927 F.2d at 115; *see also United States v. Colon,* 961 F.2d 41, 43–44 (2d Cir.1992). A "common scheme," in contrast, requires a connection among participants and occasions. *See United States v. Burnett,* 968 F.2d 278, 280 (2d Cir.1992); *see also Perdomo,* 927 F.2d at 114–115. The Guidelines include for sentencing purposes quantities of drugs—neither charged in the indictment nor physically seized—so long as the criteria for relevant conduct or common scheme are met. *See United States v. Schaper,* 903 F.2d 891, 898 (2d Cir.1990).

■ We agree with the district court's factual determination that Shonubi's travel during 1990–91 was part of the same course of conduct as the instant smuggling offense. *Cf. United States v. Vazzano,* 906 F.2d 879, 883 (2d Cir.1990) (record as a whole supported district court's finding that defendant's various drug possessions and distributions were related). The conflicting accounts in Shonubi's passport and his work attendance records amply prove that he made eight trips to Nigeria on more than one passport. It may also be inferred that appellant imported heroin during each of these journeys because he used two passports, traveled frequently, avoided using direct flights—for example, in the instant case the flight into JFK originated in Amsterdam, Holland—and could not have afforded the air fare on his toll collector's salary. That Shonubi's travel took place over a period of 15 months is no bar to finding that the trafficking was part of the same course of conduct. *See United States v. Santiago,* 906 F.2d 867, 872 (2d Cir.1990).

■ The prosecutor must nonetheless prove drug quantity by a preponderance of the evidence. The just recited facts fail to do this. Although they support the conclusion that Shonubi smuggled heroin on occasions other than December 10, 1991, the day he arrived in the United States and was arrested, there is simply no proof he imported 427.4 grams of heroin on each of his seven other trips. Case law uniformly requires specific evidence—*e.g.,* drug records, admissions or live testimony—to calculate drug quantities for sentencing purposes. *See, e.g., United States v. Lasanta,* 978 F.2d 1300, 1309 (2d Cir.1992) (analysis of wiretap conversations among co-conspirators and co-participant's testimony); *United States v. Rivera,* 971 F.2d 876, 892–93 (2d Cir.1992) (drug records); *Burnett,* 968 F.2d at 280 (co-participant's testimony); *Colon,* 961 F.2d at 43 (defendant's admission, conservative estimate of drug sales period and heroin seized); *Santiago,* 906 F.2d at 871–72 (telephone records, defendant's admission and co-participant's statement); *Schaper,* 903 F.2d at 896–97 (government informant's testimony, drug records and defendant's admissions). This careful practice is essential where a defen-

dant's sentence depends in such large measure on the amount of drugs deemed attributable to his conduct. The government failed to prove by a preponderance of the evidence that Shonubi imported more than 427.4 grams of heroin; only speculation links appellant to any importation of drugs beyond 427.4 grams. The district court's factual findings to the contrary when it imposed sentence were therefore necessarily predicated on surmise and conjecture. As such, they were clearly erroneous.

### III   Role in the Offense

■■■■ Further, appellant asserts that he proved by a preponderance of the evidence that he was only a minor or minimal participant in heroin importation. The district court refused to so find and therefore did not reduce his sentence. The Sentencing Guidelines provide for a two-level decrease in offense level where a defendant is a "minor participant" in criminal activity and a four-level decrease for a defendant who is a "minimal participant." U.S.S.G. § 3B1.2. The defendant must prove his or her reduced culpability by a preponderance of the evidence. See United States v. Lopez, 937 F.2d 716, 726–27 (2d Cir.1991). A sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends upon "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Garcia, 920 F.2d 153, 155 (2d Cir.1990) (per curiam ).

Shonubi describes his role in heroin smuggling as that of a lowly courier. He insists he must be a minor or minimal participant because he had no money to acquire heroin independently and no accumulated drug profits. In rejecting this characterization, the trial court stated: "[d]efendant was not the foolish, occasionally even unwitting, drug mule who frequently comes before this court." Shonubi, 802 F.Supp. at 864. Instead, it believed appellant "regularly and systematically engaged in the business of narcotics trafficking" and "deserve[d] no leniency." Id.

■■■■ A defendant's courier status does not entitle him automatically to the benefit of the minor and minimal role adjustments. See Garcia, 920 F.2d at 155. Nor do limited finances prove that a defendant was a minor or minimal participant. See United States v. Adames, 901 F.2d 11, 12 (2d Cir.1990). A sentencing court is not bound to accept defendant's self-serving characterizations of his role in an offense. It is not defendant's exact role or status in the criminal activity that necessarily decides this question; rather, it is an assessment of defendant's culpability in the context of all the circumstances. See Garcia, 920 F.2d at 155; see also Lopez, 937 F.2d at 727. It was not clearly erroneous to find Shonubi more than a minor or minimal participant or, in other words, not "substantially less culpable than the average participant" in this heroin trafficking scheme. U.S.S.G. § 3B1.2, comment. (backg'd.).

As stated, appellant regularly engaged in drug smuggling, and the uncharged conduct of his seven other trips to Nigeria is relevant on this issue. See Perdomo, 927 F.2d at 117. The quantity of drugs imported—so crucial to the determination of a base offense level— is not the question here. The pattern of travel, as well as the known quantity of drugs Shonubi carried—the heroin recovered in December 1991 was worth $44,000 wholesale—suggest broad knowledge and culpability in the heroin trade. Judge Weinstein credited Shonubi's post-arrest statement that he owned the 427.4 grams of heroin seized. Deferring to the district court's credibility evaluations, there is no inconsistency in the decision to credit this post-arrest statement while discrediting appellant's later sworn testimony. See Santiago, 906 F.2d at 872.

Shonubi thus failed to prove he was a minor or minimal participant. Cf. United States v. Soto, 959 F.2d 1181, 1187 (2d Cir. 1992) (defendant entrusted with large quantity of narcotics packaged for distribution not minor participant); Lopez, 937 F.2d at 727– 28 (defendant not minimal participant where he knew of plan to sell cocaine, helped with transaction and expected payment); Garcia, 920 F.2d at 155–56 (drug courier entrusted

with $23,000 worth of cocaine not minor participant). Consequently, the district judge did not err in declining to characterize Shonubi as a minor or minimal participant in heroin trafficking and to reduce his sentence accordingly.

## CONCLUSION

The judgment of the district court insofar as it imposed sentence is vacated and the matter is remanded to that court for resentencing consistent with this opinion.