**UNITED STATES of America,**
**Appellee,**

v.

**Shu Leung NG, Defendant–Appellant.**

**No. 00–1729.**

United States Court of Appeals,
Second Circuit.

June 27, 2001.

Barry E. Schulman, Law Offices of Barry E. Schulman & Michael A. O'Connor, Brooklyn, NY, for appellant.

David C. Esseks, United States Attorney's Office for the Southern District of New York; Mary Jo White, United States Attorney, and Christine H. Chung, Assistant United States Attorney, on the brief, for appellee.

Present JACOBS, PARKER, and SOTOMAYOR, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the United States District Court for the South-

ern District of New York be, and it hereby is, AFFIRMED.

Ng Shu Leung appeals from a judgment of conviction entered on October 4, 2000 in the United States District Court for the Southern District of New York (Koeltl, J.), following his guilty plea. Ng pleaded guilty to one count of conspiracy to distribute heroin, in violation of 21 U.S.C. § 846, and was sentenced principally to 97 months in prison. On appeal, Ng contends that the district court clearly erred by refusing to reduce his base offense level by two points for his role in the offense, pursuant to Sentencing Guidelines § 3B1.2. For the reasons set forth below, the district court committed no clear error in determining that Ng was not a "minor participant" in the illegal activity, and Ng's sentence is therefore affirmed.

## I.

During his plea colloquy, Ng admitted that: "In the early part of 1996, I, along with other people, agreed to bring some heroin from Los Angeles to New York, Manhattan, and I was aware that those substances were drugs." Specifically, Ng revealed that in March 1996, he and another individual flew from San Francisco to Los Angeles to take delivery of a shipment of heroin, and then transported that shipment to Manhattan, where they delivered it to another co-conspirator for sale.

The Pre Sentence Report provides a more complete picture of the nature of Ng's role in the transaction. Before delivering the shipment of heroin to Manhattan, Ng had helped arrange for the receipt of the drugs from Hong Kong at a port in Los Angeles. According to the PSR, one of Ng's co-conspirators-later a cooperating witness ("CW") at trial-had traveled to Hong Kong in 1995, and, while there, had negotiated for the delivery of a shipment of heroin to the West Coast. Ng agreed to meet the vessel containing the heroin shipment in Los Angeles, ostensibly to test the arrangements to smuggle the drugs through customs. Ng reported back to CW that the arrangements were acceptable.

CW, then based in New York City, orchestrated the delivery from Hong Kong to the United States of the shipment that formed the basis of Ng's conviction. After receiving word that a shipment of drugs would be arriving in the States, CW directed an associate-Jeffrey Mai-to travel to Los Angeles. Meanwhile, CW traveled to San Francisco, picked up Ng, and then continued on to Los Angeles. Once in Los Angeles, CW directed Ng and Mai to pick up the heroin at the shipping pier, which they did (successfully shepherding 11 units through customs), and then sent them on a bus the following day to New York City with the heroin hidden in their luggage. CW then returned to New York City. Once Ng and Mai delivered the heroin to CW in New York, CW sold portions of the heroin, and eventually paid Ng $10,000 plus travel expenses.

The PSR calculated Ng's offense level at 32, based on Ng's participation in a conspiracy to distribute more than three but less than ten kilograms of heroin, pursuant to Guidelines § 2D1.1(c)(3) and a two-level downward adjustment because Ng met the conditions of the "safety valve" set forth in Guidelines § 5C1.2. At sentencing, the district court adopted these recommendations, and awarded an additional two-level downward adjustment for acceptance of responsibility under Guidelines § 3E1.1(a). The court refused, however, to grant another two-level downward adjustment under Guidelines § 3B1.2(b), finding that "[it] cannot be said that the defendant was substantially less culpable than the average participant in the offense." The court explained:

The defendant carried a substantial amount of heroin across the country, knowing that in fact it was heroin, and his role was more than that of a courier. His role also included assessing the viability of the delivery arrangements for the importation scheme into the United States. While the defendant attempts to downplay his role, taking all of the circumstances of the defendant's participation into account, his role was not that of a minor participant.

## II.

Ng argues that the district court's refusal to award him a two-level reduction for his role in the offense was clear error. "On [a] sentencing appeal, [the Court] must 'accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts.'" *United States v. Molina,* 106 F.3d 1118, 1121 (2d Cir.1997) (quoting 18 U.S.C. § 3742(e)). A district court's refusal to adjust downward a defendant's sentence for a mitigating role is reviewed for clear error only. *See United States v. Imtiaz,* 81 F.3d 262, 265 (2d Cir.1996) (per curiam). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Guidelines § 3B1.2(b) provides for a two-level reduction in the offense level "[i]f the defendant was a minor participant in any criminal activity." The Guidelines define "Minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* cmt. n. 3. The adjustment may be awarded if the defendant is "substantially less culpable than most other participants." *Id.* Whether a

minor role reduction is warranted depends on factors such as "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia,* 920 F.2d 153, 155 (2d Cir.1990) (per curiam).

Ng contends that his involvement in the narcotics transaction "comprised acting as a courier or 'mule' on a single occasion," and that he merely "acted at the behest of other individuals." CW, Ng argues, masterminded the operation, and by definition Ng must have played a minor role.

The fact that Ng was evidently less culpable than CW does not itself require a two-level downward adjustment. *See United States v. Lopez,* 937 F.2d 716, 728 (2d Cir.1991) ("The intent of the Guidelines is not to 'reward' a guilty defendant with an adjustment merely because his coconspirators were even more culpable."); *United States v. Tholl,* 895 F.2d 1178, 1185–86 (7th Cir.1990) (defendant not entitled to minor role adjustment "simply because he did not concoct the scheme"). Ng transported a significant quantity of heroin across the country, knowing its nature and quantity, who sent it, and where it was headed; this alone has been held sufficient reason to deny a two-level downward adjustment for role in the offense. *See, e.g., United States v. Idowu,* 74 F.3d 387, 397 (2d Cir.1996) (affirming denial of minor role adjustment for courier of heroin from Nigeria to the United States who "had extensive knowledge of the importation scheme"); *Garcia,* 920 F.2d at 155 (affirming denial of minor role adjustment to drug courier who received $150 for single delivery of narcotics on behalf of codefendants he met for the first time on the delivery date because "[c]ouriers are indis-

pensable to the smuggling and delivery of drugs and their proceeds").

Moreover, Ng understates his role: the PSR indicates that he agreed to meet the initial heroin shipment in Los Angeles, ostensibly to evaluate the arrangements to smuggle the drugs involved in the instant offense through customs.

In denying Ng's request for a two-level downward adjustment, Judge Koeltl committed no clear error in relying on the facts that Ng (i) assessed the viability of the delivery arrangements for the importation scheme into the United States, (ii) transported approximately eight kilograms of heroin by bus from Los Angeles to New York with a coconspirator with full knowledge of the illicit nature of his activities and (iii) accepted a payment of $10,000 for his effort.