**Richard KEATS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. 93 Civ. 3576 (JES), 88 Cr. 152 (JES).

United States District Court, S.D. New York.

June 22, 1994.

Richard Keats, pro se.

Mary Jo White, U.S. Atty., S.D.N.Y., for respondent; Peter K. Vigeland, Asst. U.S. Atty., New York City of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner *pro se* in the above-captioned action brings this petition pursuant to 28 U.S.C. § 2255, seeking a vacatur of his convictions for conspiracy and wire fraud and an opportunity to plead to a solitary conspiracy count. In the alternative, the petitioner moves to alter the fine and/or term of imprisonment imposed at sentencing. For the reasons that follow, the petition is denied.

## BACKGROUND

On December 18, 1987, the Federal Bureau of Investigation ("FBI") arrested the petitioner Richard Keats ("Keats") for his participation in a fraudulent scheme to obtain bearer bonds from a New York brokerage house and to sell the bonds to purchasers in Europe. Movant's Motion to Vacate Judgment of Sentence and Memorandum of Law ("Pet.Br.") at 1. At the time, Keats was on parole from a fraud conviction in the Eastern District of Pennsylvania. Affidavit of Peter K. Vigeland dated July 2, 1993 ("Vigeland Aff.") ¶ 10. On March 17, 1988, Keats was indicted on one count of conspiracy in violation of 18 U.S.C. § 371. *See* Indictment 88 Cr. 152. He was released on bail the following December. Vigeland Aff. ¶ 2(b).

In April 1989, Keats, represented by a court-appointed attorney, Martin J. Siegel, Esq. ("Siegel"), began plea negotiations with the Government. Affirmation of Martin J. Siegel, Esq. dated July 2, 1993 ("Siegel Aff.") at 1. At that time, the Government offered Keats a maximum sentence of five years if he pleaded guilty to the single conspiracy count. *Id.* The Government also indicated that it would seek a superseding indictment with additional wire fraud counts if Keats chose not to plead guilty. Pet.Br. at 9. According to Siegel's affirmation, Siegel advised Keats that a conviction under the superseding indictment would result in a sentence in excess of five years. Siegel Aff. at 1–2. Keats

contends, however, that Siegel informed him that the maximum sentence would be five years, regardless of any additional counts. *See* Movant's Response to Affidavits, Affirmation and Government Memorandum of Law In Opposition to Habeas Petition ("Pet. Resp.Br.") at 6. After Keats rejected the offer and entered no plea, the Government filed a superseding indictment that charged Keats with six additional counts of wire fraud in violation of 18 U.S.C. § 1343. Vigeland Aff. ¶ 2(c). After a bench trial in April 1990, this Court convicted Keats of all seven federal charges.

In the meantime, during the time that Keats was awaiting trial before this Court, Keats was arrested on August 30, 1989 pursuant to an investigation by the Manhattan District Attorney. Keats ultimately pleaded guilty in July 1990 to state charges of grand larceny in New York Supreme Court. *Id.* at 3. The state officials who arrested Keats on August 30, 1989 found a Ryder truck containing Keats's belongings in front of his home, *see* Sent.Tr. (Oct. 22, 1990) at 40–41, an Israeli visa application, Gov't Ex. 33, an El Al Airlines timetable with notations regarding a flight leaving the next day, Gov't Ex. 34, and a computer printout reserving seats for "Mr. & Mrs. Kats" on a flight to Israel the next day. Gov't Ex. 35. On October 23, 1990, after a sentencing hearing of over three hours, during which Keats testified, Sent.Tr. (Oct. 22, 1989) at 40–45, this Court found that Keats had intended to flee to Israel when he was arrested on August 30, 1989. Sent.Tr. (Oct. 23, 1989) at 98.

On the same date, this Court sentenced Keats pursuant to the sentencing guidelines to a prison term of 96 months and a fine of $100,000. Sent.Tr. (Oct. 23, 1989) at 118. Although Keats's counsel advanced several arguments in support of sentence reduction, the Court found that: the initial offense level was properly set because Keats was responsible for a scheme to cause losses in excess of $5 million, *id.* at 4–6, 100–01; a two-level enhancement was appropriate for more than minimal planning, *id.* at 6–7, 100; a two-level enhancement was appropriate for obstruction of justice due to Keats' attempted flight, *id.* at 100; Keats's state conviction mandated an upward departure to the next criminal history category, *id.* at 101; and it would be legally erroneous to limit the sentence of a multicount case to the longest maximum sentence of only one of those counts, *id.* at 103–04. The Court did agree that a two-level enhancement for being an organizer was inapplicable in a two-person conspiracy. *Id.* at 106, 114.

Keats's counsel argued to the Court, unsuccessfully, that Keats was financially unable to pay the fine. *Id.* at 119. In his allocution, Keats maintained his innocence. *Id.* at 108–13.

On November 1, 1990, Keats appeared before the Court to correct an error in the original sentence by reducing the fine to $75,000. Neither Keats nor his attorney requested an indigency hearing at that time. Sent.Tr. (Nov. 1, 1990) 4–5.

Siegel continued to serve as counsel for Keats on his appeal of his conviction to the United States Court of Appeals for the Second Circuit. The Second Circuit affirmed the conviction and sentence, stating that Keats had failed to meet his burden in challenging the sufficiency of evidence and that no meritorious challenge to the sentence was presented. On behalf of Keats, Siegel also filed a petition for certiorari in the United States Supreme Court. *See United States v. Keats,* 937 F.2d 58, 68 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991).

On May 27, 1993, Keats, proceeding *pro se,* filed a petition pursuant to 28 U.S.C. § 2255 to vacate his conviction and, in the alternative, to alter his sentence. Keats claims that he received ineffective assistance of counsel and that the Court miscalculated his sentence.

### DISCUSSION

Where, as here, a defendant has failed to raise a claim on direct appeal, his claim is barred from collateral review on a § 2255 petition unless he can demonstrate "cause" for the default of normal appellate procedure and actual "prejudice" from the alleged violation on which the claim is based. *See Campino v. United States,* 968 F.2d 187,

189 (2d Cir.1992); *see also United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Under the cause and prejudice test, " '[c]ause' ... must be something *external* to the petitioner, something that cannot be fairly attributed to him," *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (emphasis in original), and the "prejudice" must be so substantial that it undermines the integrity of the entire proceeding. *See Frady*, 456 U.S. at 170, 102 S.Ct. at 1595. The Second Circuit has recently carved out an exception to the *Campino* requirement that a § 2255 petition establish "cause," however, for those § 2255 petitions that raise an issue of ineffective assistance of counsel unless (1) the petitioner was represented by new appellate counsel on direct appeal, and (2) the claim is based solely on the record developed at trial. *See Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993).

Keats has raised three grounds for ineffective assistance of counsel: (1) that counsel failed to adequately advise Keats of the penalty of not pleading guilty to one count of conspiracy before the Government filed a superseding indictment; (2) that counsel failed to request an evidentiary hearing to establish Keats's inability to pay a fine due to indigency; and (3) that counsel failed to object to the allegedly illegal guidelines sentence recommended in the Pre–Sentence Investigation Report. Since Keats did not have new counsel on appeal, the exception to *Campino* is applicable here. Nevertheless, Keats's petition must still be dismissed since Keats has suffered no prejudice as a consequence of the alleged ineffective representation.

■ The standard governing Keats's claims of ineffective assistance of counsel is well settled. The defendant must: (1) overcome a strong presumption that his counsel's conduct was reasonable and show that his counsel's representation fell below "an objective standard of reasonableness" under "pre-

vailing professional norms;" and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *see also United States v. Aquirre*, 912 F.2d 555, 560 (2d Cir.1990); *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *United States v. Bari*, 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

■ Keats has not come close to meeting that standard.[1] Although Keats complains of counsel's decisions not to press the Court for an indigency hearing and not to object to the Presentence Report's guideline offense level calculation, in fact Keats's attorney did ask the Court to consider Keats's indigency, *see* Sent.Tr. (Oct. 23, 1989) at 119, and did raise a host of guidelines issues in support of a reduction in Keats's offense level both at sentencing and on appeal. Moreover, Keats has not established that an indigency hearing would have altered the Court's view of his financial status. This is especially true since it is highly probable that the indigency claim, like Keats's claim that he did not intend to flee, would have rested largely on the credibility of Keats's testimony, which the Court had already rejected with respect to the flight enhancement issue. In any event, Keats is free at any time to seek relief from the consequences of his failure to pay the fine, as the Court noted at sentencing, and therefore cannot conceivably be prejudiced by the imposition of that fine. *See Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *United States v. Mack*, 655 F.2d 843 (8th Cir.1981); *see also Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Morris v. Schoonfield*, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970); *United States v. Glazer*, 532 F.2d 224 (2d

---

1. The Government argues that Keats's attorney properly advised him that a conviction under the superseding indictment would result in a sentence in excess of five years. Siegel Aff. at 1–2. Keats contends, however, that Siegel advised Keats that the maximum sentence would be five years despite a superseding indictment. Keats Br. at 6. The Court need not decide which contention should be accepted because Keats cannot establish that he would have accepted *any* plea offer.

Cir.1976), *cert. denied,* 429 U.S. 844, 97 S.Ct. 123, 50 L.Ed.2d 115 (1976). Given that circumstance, counsel cannot be deemed to have been ineffective for not pressing further for a hearing on that issue.[2]

■ Furthermore, Keats has not and cannot establish, regardless of what advice he allegedly received from his counsel, that he would have accepted a plea offer at that time. *See e.g., Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Indeed, Keats protested his innocence to this Court even as late as sentencing, where he asserted that he lacked criminal intent and that he was only attempting to act as a Government agent when dealing with the undercover agent. Sent.Tr. (Oct. 23, 1989) at 108–13. In the face of these assertions his belated claim that he would have pleaded guilty lacks any semblance of credibility. Furthermore, Keats's attempted flight in August 1989, at a time when, *according to his own allegations,* he believed that he would receive no more than five years of incarceration also belies his claim that he would have accepted a plea offer that would have resulted in a five-year sentence, especially since a guilty plea in this case would have violated Keats's parole in the Eastern District of Pennsylvania, resulting in an additional sentence of imprisonment to run consecutive to any sentence imposed by the Court in this case.

2. Section 5E1.2 of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Guidelines § 5E1.2(a). In imposing a fine, a court is to consider, *inter alia,* "the defendant's income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1) (1988). Although the fact that the "defendant is represented by (or was determined eligible for) assigned counsel" is a "significant indicator[ ] of present inability to pay any fine," Guidelines § 5E1.2 Application Note 3, that fact was not likely to be dispositive where, as here, during the course of the offense, Keats himself revealed to the informant and the agent that he had substantial assets overseas, a circumstance confirmed by his preparations for his aborted attempt to flee to Israel. Furthermore, even at this late date, Keats has not made any specific showing that a hearing would have elicited different information from that relied upon by the Presentence Report and the Court. *See United States v. Marquez,* 941 F.2d 60 (2d Cir.1991). The Court stated that:

■ Finally, Keats's argument that his trial counsel should have moved for a three-level reduction in the offense level pursuant to § 2X1.1 of the Sentencing Guidelines, Pet. Br. 39, is untenable. In his § 2255 petition, Keats contends that the offense level for both his conspiracy and wire fraud convictions should have been reduced by three levels pursuant to U.S. Sent. Guidelines § 2X1.1(b)(2),[3] which applies to attempts, solicitations, and certain conspiracies, because the conspiracy and wire fraud counts of conviction must be grouped. Pet.Br. 34–36. However, a three-level reduction for the conspiracy count would have had no effect on the ultimate offense level once all the counts were grouped. *See* U.S.S.G. §§ 3D1.2, 3D1.3. The Guidelines, in grouping offenses, determine the appropriate guideline based on the highest level offense. Therefore, since the substantive wire fraud is the higher offense, and since the offense level for the substantive wire fraud would not have been subject to any three-level reduction, the three-level reduction for the conspiracy count would have had no effect on the ultimate offense level after grouping. Indeed, to accept Keats's interpretation of § 2X1.1(b)(2) would yield the absurd result that a person convicted of both conspiracy and wire fraud would have a lower guideline than one convicted only of the substantive offense.

"If he can demonstrate that [he does not have financial resources to pay a fine] to the satisfaction of the government at some point in time, they won't be able to collect it; but I am not satisfied he does not have the financial ability to pay a fine. It appears to me, at least from what I have seen and heard about his life history and his present situation, that he does have the financial ability to pay a fine. Therefore, I will impose that. If he can't pay, that is something we will have to deal with later." Sent.Tr. (Oct. 23, 1989) 119.

3. Guidelines § 2X1.1(b)(2) provides that:

"If a conspiracy, decrease by 3 levels, unless the defendant ... completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control."

Moreover, Keats's argument that § 2F1.1, the fraud offense level guideline which was amended during the period of Keats's incarceration to provide for a possible three-level reduction, requires a retroactive reduction similarly lacks merit. The thrust of this argument relies on a 1991 amendment to the commentary to the wire fraud guideline, U.S.S.G.App. C, Amendment 393 (effective November 1, 1991), which permits a court, where appropriate, to incorporate the three-level reduction found in § 2X1.1(b)(2) when calculating the offense level for fraud under § 2F1.1. The Sentencing Guidelines, however, do not provide for the retroactive application of Amendment 393.

The Court may modify an imposed term of imprisonment based on a post-sentencing amendment of the Guidelines only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Policy Statement governing the retroactivity of amended guideline ranges, § 1B1.10, provides an exclusive list of the specific Guidelines amendments that may allow a retroactive reduction in the term of imprisonment and states, "If none of the amendments listed ... is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement." § 1B1.10(a). Amendment 393 is not among the Guidelines' list of amendments to be given retroactive effect. § 1B1.10.

Keats further argues that where an amendment serves merely to clarify an existing guideline, courts have consistently held that such amendments may be used to explain existing guidelines and may receive retroactive effect, irrespective of whether they are listed in § 1B1.10. *See United States v. Caballero*, 936 F.2d 1292, 1299 n. 8 (D.C.Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992); *Isabel v. United States*, 980 F.2d 60, 62–63 (1st Cir.1992); *United States v. Dedeker*, 961 F.2d 164, 166 n. 4 (11th Cir.1992); *United States v. Perdomo*, 927 F.2d 111, 116–117 (2d Cir.1991); *United States v. Fiala*, 929 F.2d 285, 290 (7th Cir.1991); *United States v. Howard*, 923

F.2d 1500, 1504 (11th Cir.1991); *United States v. Irvin*, 906 F.2d 1424, 1427 (10th Cir.1990); *United States v. Ofchinick*, 877 F.2d 251, 257 n. 9 (3d Cir.1989). However, most cases applying clarifying amendments retroactively have done so on direct appeal, although the First Circuit in *Isabel v. United States*, 980 F.2d 60 (1st Cir.1992), granted a § 2255 motion that sought to apply a clarifying amendment to the commentary to § 3C1.1's obstruction of justice enhancement provision after sentencing and direct appeal. *Id.* at 63; *see also United States v. Smythe*, 1993 WL 86439, 1993 U.S. Dist. LEXIS 3574 (E.D.Pa. March 4, 1993).

The Second Circuit has not addressed the issue of whether Amendment No. 393 established a clarification or a substantive change to the Guidelines. There is some support in the Amendment itself for the proposition that the Sentencing Commission intended the amendment to be a clarification: "The amendment ... conforms the wording of ... the Commentary to § 2F1.1 to ... the Commentary to § 2B1.1 to make clear that the treatment of attempts in cases of fraud and theft is identical." U.S.S.G., Appendix C at 818–819. On the other hand, at least one circuit court has held that Amendment No. 393 reflects a substantive change in the Guidelines that should not be applied retroactively to incorporate § 2X1.1(b) into the calculation of fraud loss under § 2F1.1. *United States v. Koenig*, 952 F.2d 267, 273 (9th Cir.1991).

In any event, even assuming, *arguendo*, that Amendment 393 merely clarified § 2F1.1, no change in Keats's sentence is called for because Keats is not entitled to a downward adjustment under § 2X1.1(b)(2). *See United States v. Strickland*, 935 F.2d 822, 831–32 (7th Cir.), *cert. denied sub nom. Moore v. United States*, — U.S. —, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991). The facts elicited at trial revealed that Keats had *completed* all the acts necessary to carry out the fraud. Under the plain language of U.S.S.G. § 2X1.1(b)(2), no reduction is required "unless the ... circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension." *See United*

*States v. Strozier,* 981 F.2d 281, 286 (7th Cir.1992). That is clearly not the case here.

## CONCLUSION

For the reasons stated above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**