*235 MEMORANDUM OPINION AND ORDER
SPRIZZO, District Judge.
Pursuant to 28 U.S.C. § 2255, petitioner Alfredo Spavento brings the above-captioned action seeking to vacate Ms conviction and sentence for distribution and conspiracy to distribute illegal narcotics. Spavento claims, inter alia, that he was demed Ms Sixth Amendment right to effective assistance of counsel by each of Ms three lawyers representing him in tMs case. Specifically, Spa-vento claims that his trial counsel failed to 1) conduct any pre-trial investigation, 2) pursue the possibility of a plea bargain, 3) advise Spavento of Ms right to a public trial, and 4) object to certain alleged ex parte commumca-tions between the Court and the Government. Spavento claims that Ms sentencing counsel failed to move for a downward departure and to object to certain sentencing enhancements. In addition, Spavento claims that Ms appellate counsel failed to review and correct a portion of the trial transcript in wMch Spavento admitted Ms involvement in the indicted offense, an admission wMch Spa-vento now claims resulted from mistranslation, mistranscription, or misunderstanding. For the following reasons, the petition must be demed.
BACKGROUND
On April 13, 1988, Spavento and several co-defendants were indicted on charges of operating and conspiring to operate an international narcotics network to distribute heroin to wholesale customers.
On October 31,1988, a six month jury trial of Spavento and several co-defendants commenced. The evidence established the existence of a narcotics conspiracy to import at least one kilogram of heroin into the UMted States, to export at least five kilograms of heroin, and to distribute at least one kilogram of heroin domestically. Central to tMs conspiracy was Spavento’s ownersMp and operation of a retail store called the Garage Sale. From tMs base of operation, Spavento oversaw the activities of the conspiracy, arranged for sources to supply narcotics and directed their delivery to wholesale customers.
The conspiracy was investigated by Federal Bureau of Investigation Special Agent Caruso who posed undercover as a wholesale drug purchaser. Agent Caruso negotiated four drug transactions with Spavento over a six month period, two of wMch were actually consummated. On May 19, 1987, Michelangelo La Scala, a government informant and friend of Spavento, introduced Agent Caruso to Spavento at the Garage Sale. Trial Tr. at 4798-99. La Scala introduced Agent Caruso as a drug dealer who purchased large quantities of heroin. Id. at 4798-99,4808. Spaven-to took Agent Caruso aside and said, “I don’t do tMs type of things, but I know where we can get three pair of pants. You know, that’s what we call it. And there’s seven more coming in. This guy usually gets 215,000 for each pair of pants, you know, a kilo.” Id. at 4809, 4810. After negotiating the price, Agent Caruso told Spavento that he needed a week to get the money together and asked if the heroin would be available in a week. Id. at 4811. Spavento responded that he would call Agent Caruso when he had more heroin.
On June 24, 1987, Agent Caruso called Spavento and asked, “do you have my smt?” Trial Tr. at 4817. Spavento responded, “[j]ust come on over.” Id. When he arrived at the Garage Sale, Agent Caruso again asked Spavento, “[d]o you have my suit?” Id. at 4818. When Spavento asked how long Agent Caruso would be in New York, Agent Caruso responded that if he did not “buy the key” that day or the next, he would have to return another day. Id. at 4819. Spavento replied, “[w]ell, I will make some phone calls and see if I can get ahold [sic] of the guy to introduce you.” Id. While attempting to coordinate and exchange the first kilogram of heroin, Spavento stated that co-defendant Calderone has “got the stuff, but he can’t be moving it now. It’s too hot.” Id. at 4832. As a result of this fear of surveillance by law enforcement, the first negotiated transaction was aborted. Id.
On July 11, 1987, Agent Caruso and La Scala began to negotiate the second transaction by placing a call to Spavento. Trial Tr. at 4853. On July 28, 1987, Agent Caruso *236 called Spavento, visited the Garage Sale and thereafter saw co-defendant Riverso walking with Spavento, carrying “a brown package ... approximately 10 inches by 10 inches, [in a] brown wrapper_” Id. at 4852. Once again, however, the transaction was not consummated because the defendants suspected surveillance by law enforcement. Id. at 4853.
On August 14, 1987, Agent Caruso returned to the Garage Sale, where Spavento introduced him to Michele Módica and Vin-cenzo Miceli. Trial Tr. at 4938-40. The same day, Módica and Miceli sold Agent Caruso 988 grams of heroin for $195,000. Id. On August 25,1987, Agent Caruso completed the transaction at the Garage Sale by tendering to Spavento the $15,000 remaining balance on the purchase. Id. at 4948-49.
On December 1, 1987, undercover Drug Enforcement Administration (“DEA”) agent Thomas Geisel met Spavento’s co-defendant Emanuele Adamita at the Golden Gate Motel in Brooklyn, New York for a prearranged heroin transaction. Trial Tr. at 1929. Giesel gave Adamita $35,000 in exchange for what he believed to be 90 grams of heroin. When DEA agents weighed the heroin, they discovered that Geisel had been “shorted” 14 grams. Id. at 1931. Later that night, Giesel confronted Adamita, who later returned with the remaining 14 grams. Id. at 1933. On December 3, 1987, Agent Caruso purchased half a kilogram of heroin by placing $110,000 in a cardboard box under a rack of clothes in the rear of the Garage Sale. Id. at 4966, 4978-79. Módica gave Agent Spavento the heroin in a car parked outside the Garage Sale. Id.
At trial, Spavento was represented by counsel Thomas Nooter and provided with an Italian interpreter.[1] During trial, Nooter presented a detañed chronology of Spaven-to’s work history in his opening statement, see Trial Tr. at 182-83, and examined or cross-examined thirty-two witnesses. In addition, Nooter conducted the examination when Spavento testified on his own behalf, during which Nooter introduced thirty-nine exhibits. See Defense Exhs. W through LLL 17.
On April 25,1989, a jury convicted Spaven-to on one count each of conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) & -(b)(1)(A); distribution of 988 grams of heroin on August 14, 1987, in violation of 21 U.S.C. §§ 841(a)(1) & -(b)(1)(B) and 18 U.S.C. § 2; distribution of 78 grams of heroin of 56% purity on December 1, 1987, in violation of 21 U.S.C. §§ 812, 841(a)(1) & -(b)(1)(B), and 18 U.S.C. § 2; and distribution of 459 grams of heroin to Agent Caruso on December 3, 1987, in violation of 21 U.S.C. §§ 812, 841(a)(1) & - (b)(1)(B), and 18 U.S.C. § 2. Indictment at 2, 3,26, 27.
Prior to sentencing, the United States Probation Department provided the Court with a presentencing investigation report (“PSR”) which recommended a United States Sentencing Guidelines (the “Guidelines” or “U.S.S.G”) base offense level of 36 for quantities of narcotics involved in the conspiracy of ten kfiograms or more. See PSR, attached to Government’s Memorandum of Law in Opposition (“Gov’t. Mem.”) at Exh. C, ¶ 158. In addition, the PSR recommended a two level enhancement for Spavento’s false trial testimony pursuant to U.S.S.G. § 3C1.1, and a three level enhancement for his supervisory role in the conspiracy pursuant to U.S.S.G. § 3B1.1, resulting in a total offense level of 41. Id. ¶¶ 162,164.
At sentencing, Spavento was represented by new counsel, Gino Josh Singer, who objected to the computation of the base offense level and the enhancements recommended in the PSR. See Transcript dated October 31, 1989 (“Sent.Tr.”) at 45, 46, 59. Singer challenged the computation of the base offense level on the ground that the seven kñograms Spavento offered Agent Caruso dining their June 12, 1987 meeting were improperly included in the total heroin amount. Id. at 51- *237 59. Singer argued that the statement regarding the seven kilograms had been mere “puffery” on Spavento’s part and that the Government had failed to establish that Spa-vento actually had access to seven kilograms of heroin on that date. Id. at 52.
The Court rejected that objection, holding that sufficient evidence existed in the trial record to establish Spavento’s involvement in the distribution of at least ten kilograms of heroin or its functional equivalent under the Guidelines. Sent.Tr. at 58. In addition, the Court rejected the Probation Department’s recommendation for a two level enhancement for false trial testimony. Id. at 45. The Court accepted Spavento’s argument that Spavento’s role in the conspiracy was insufficient to warrant a three level enhancement and reduced the enhancement to two levels. Id. at 64-65. The net effect reduced Spaven-to’s total offense level to 38, which carried a term of imprisonment of 235 to 292 months. On October 31, 1989, the Court sentenced Spavento to 250 months of imprisonment, followed by four years of supervised release, and a mandatory assessment of $50 per count. Id. at 86.
On appeal, Spavento was represented by his third counsel, Steven A. Feldman. Feld-man raised several issues on appeal, including a challenge to the two level enhancement for his role as an organizer, on the ground that the Government had not succeeded in linking the conspiracies in which Spavento was involved. At no time did Spavento or any counsel object to the quality of his legal representation. On April 30, 1991, the Second Circuit affirmed Spavento’s conviction and sentence by summary order. See United States v. Adamita, 932 F.2d 957 (2d Cir.1991); see also unpublished opinion at Gov’t. Mem., Exh. A.
Spavento, represented by new counsel, brings the instant action seeking to vacate his conviction on the ground that his Sixth Amendment rights were violated when he was denied effective assistance of counsel and a public trial. Spavento claims that he was denied his Sixth Amendment right to a public trial when the jury used headphones to listen to evidence on tapes. Finally, Spa-vento challenges the calculation of his base offense level on the basis of two Second Circuit cases decided after his sentence and appeal.
DISCUSSION
A petitioner asserting a claim of ineffective assistance of counsel must (1) overcome a strong presumption that his counsel’s conduct was reasonable and show that his counsel’s representation fell below “an objective standard of reasonableness” under “prevailing professional norms;” and (2) “affirmatively prove prejudice,” that is, show that “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 2064-68, 80 L.Ed.2d 674 (1984); see also United States v. Aguirre, 912 F.2d 555, 560 (2d Cir.1990).
The claims that trial counsel failed to conduct a pre-trial investigation and to interview Spavento before he testified lack a factual basis in the record, and indeed are contradicted by the record of his counsel’s performance at trial. That record conclusively demonstrates trial counsel’s preparation for and active participation at trial. Spavento’s trial attorney Nooter filed pretrial motions, examined and cross-examined numerous witnesses from both sides, offered defense exhibits, including 39 during Spavento’s testimony alone, played 29 taped recordings for the jury, and provided the jury with English translations of these recorded Italian conversations.
Nor are the claims that trial counsel failed to pursue the possibility of a plea bargain and to advise Spavento against testifying on his own behalf worthy of serious consideration. Where, as here, Spavento’s trial counsel’s assistance was otherwise reasonably effective, his counsel’s refusal to pursue plea bargaining opportunities cannot form the basis of an ineffective assistance claim. See Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir.1993), cert. denied, 510 U.S. 1125, 114 S.Ct. 1088, 127 L.Ed.2d 403 (1994). Moreover, although Spavento claims that his sentence would have been shorter if he had pleaded guilty and received a two point reduction for acceptance of responsibility, see *238 U.S.S.G. § 3E1.1, that contention lacks any persuasive force because Spavento has not come forward with any facts establishing that he would have accepted any plea offer either prior to or at trial. See Keats v. United States, 856 F.Supp. 162, 166 (S.D.N.Y.1994), aff'd, 50 F.3d 3 (2nd Cir.1995) (citing Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-371, 88 L.Ed.2d 203 (1985)). Indeed, at sentencing, Spavento continued to maintain his innocence by claiming that he never intended to participate in the narcotics conspiracy but merely assisted Agent Caruso as a favor to his long-time friend La Scala. See Sent.Tr. at 81. In the face of these assertions, his belated contention that he would have pleaded guilty borders on frivolous. See Keats, 856 F.Supp. at 166.[2]
Spavento also argues that his Sixth Amendment rights were violated when his counsel failed to object to ex parte communications between the government and the trial Court. At trial, the Court discussed the issue of an anonymous jury with the prosecution outside the presence of defense counsel. See Trial Tr. at 19-27. While Spavento’s attorney did not object to these ex parte communications, counsel for his co-defendants raised an objection. Id. In response, the Court explained its reasons for conducting Spavento’s trial with an anonymous jury and granted each defendant an exception thereto. Id. at 23-26.
However, that issue is procedurally barred because Spavento failed to raise this issue on direct appeal even though he was represented by new counsel and this claim is based entirely upon the record. In addition, Spavento has not and cannot establish cause and prejudice for his failure to raise that claim on appeal, see Campino v. United States, 968 F.2d 187, 189-90 (2d Cir.1992); Billy-Eko v. United States, 968 F.2d 281, 283 (2d Cir.1992), or that this ruling of the Court constituted a complete miscarriage of justice. See Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). In any event, the use of an anonymous jury did not implicate Spavento’s constitutional rights where, as here, the government demonstrad ed a risk of tampering and the Court conducted a careful four day voir dire designed to prevent any bias from resulting from the use of that procedure.[3] See United States v. Aulicino, 44 F.3d 1102 (2d Cir.1995).
Spavento’s contention that he was denied his Sixth Amendment right to a public trial because jurors used headphones to listen to taped conversations must be likewise denied as procedurally barred. Spavento failed to raise this issue on direct appeal and has failed to establish, let alone allege, cause or prejudice for his failure to do so. See Campino, 968 F.2d at 189-90. In addition, the claim that he was denied effective assistance of counsel when his trial counsel failed to explain his right to a public trial and when appellate counsel failed to raise the issue on direct appeal must also be rejected.
In any event, Spavento has submitted no case authority to support the proposition that the use of headphones deprived him of a public trial. This is especially true where, as here, the trial remained open to the public, transcripts of the tapes were given to all parties and no party or member of the public either objected to that procedure or requested that the tapes be played in some other manner. It follows that since Spavento received a public trial consistent with his Sixth Amendment rights, see Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), his attorney’s alleged failure to advise otherwise at trial or on appeal cannot form the basis of an ineffective assistance of counsel claim.
In addition, Spavento’s claim that his sentencing counsel was ineffective for failing to move for a downward departure based upon an unreasonably high base offense level, which Spavento terms “sentencing factor manipulation,” is untenable. Pet’n. at 15. *239 Here, Spavento was convicted of distributing 988 grams of heroin to Agent Caruso on August 14, 1987. Spavento insists that the Government initiated the subsequent transactions merely to inflate his base offense level, which he claims should have been calculated at level 30 based upon the 988 grams of heroin purchased by Agent Caruso from Módica and Miceli. In the alternative, Spa-vento argues that his base offense level should have been 32 since the trial record does not support his access to more than three kilograms of heroin. At issue is the inclusion of seven kilograms of heroin, which Spavento told Agent Caruso he could obtain during their meeting at the Garage Sale on June 24, 1987. See Sent.Tr. at 4798-99.
At sentencing, Spavento’s counsel argued against a base offense level of 36 on the ground that Spavento’s offer to provide Agent Caruso with seven kilograms of cocaine was mere “puffery.” See Sent.Tr. at 45-78. The Court rejected this argument, concluding that the record, which established Spavento’s ability to produce heroin upon request, warranted the inclusion of the seven kilograms. Id. at 59. That finding was upheld by the Court of Appeals when that issue was raised on appeal.
Furthermore, both Spavento’s sentencing and appellate counsel challenged the recommended three level enhancement for Spaven-to’s supervisory role in the offense. When the sentencing Court agreed to a two level enhancement pursuant to U.S.S.G. § 3Bl.l(e), Spavento’s counsel continued to argue against any enhancement:
The reason I think that even a 2 is excessive is because the statute talks of a supervisor role, and there is some obedience that is due to the defendant by other people involved in the criminal scheme. Now, if Spavento is a broker, which is what we are talking about here, no one owes any obedience to a broker.
Id. at 65. The Court likewise rejected this argument. Id. at 67-68. The Second Circuit affirmed, holding that “the evidence was overwhelming” that Spavento was an organizer in the conspiracy. Gov’t. Mem., Exh. A at 12. It follows that neither of these claims may be properly raised under 28 U.S.C. § 2255.
Spavento does not challenge the Court’s calculation of the base offense level at the time of sentencing, for these arguments were raised and rejected on direct appeal and are therefore procedurally barred. See, e.g., Riascos-Prado v. United States, 66 F.3d 30, 33 (2d Cir.1995); Cabrera v. United States, 972 F.2d 23, 25 (2nd Cir.1992). However, Spa-vento challenges his base offense level on the basis of two Second Circuit cases decided after Spavento’s sentence and appeal. Spa-vento argues that in order to include the amount of narcotics not delivered in the base offense calculation, the Court must find that the defendant had the requisite intent and capability to actually deliver that amount. In United States v. Hendrickson, 26 F.3d 321, 341 (2d Cir.1994), the court held that the Government must establish a defendant’s intent and capability to produce the amount of heroin in question, and the district court must detail the evidence and reasons supporting its findings. In United States v. Shonubi, 998 F.2d 84 (2d Cir.1993), the Second Circuit held that the Government must prove the amount of drugs in question by a preponderance of the evidence, and the Court must use specific evidence, admissions or live testimony, to calculate drug quantities for sentencing purposes.[4] Id. at 89-90.
Spavento argues that, since the Court could find him accountable for only 1525 grams of heroin, his base offense level should be 32, which applies to offenses involving more than one but less than three kilograms of heroin. However, the sentencing Court explicitly found “not only by a preponderance but by clear and convincing evidence,” that Spavento could access over ten kilograms of heroin. It follows that, even assuming these cases have retroactive effect, see United States v. Mapp, 990 F.2d 58, 61 (2d Cir.1993), and that this argument is properly raised in this petition, the requirements of Shonubi and Hendrickson are clearly satisfied. This *240 is especially true given that the Court of Appeals explicitly rejected the argument that the evidence failed to establish Spavento’s ability to provide seven kilograms of heroin in June.
Spavento further asserts that his appellate counsel was ineffective for failing to review the trial transcript. Specifically, Spa-vento claims that he never actually admitted at trial that he had introduced Agent Caruso to co-defendants Módica or Miceli for the purpose of conducting a heroin transaction.[5] Rather, Spavento claims that his admission in the transcript somehow resulted from a mistranslation, mistranscription, misunderstanding, or a combination of all three. However, because Spavento provides no factual support for his allegation that the transcript contained an “error,” his contention that appellate counsel was ineffective in failing to review the transcript and detect the error in Spavento’s testimony lacks merit. This is especially true given that Spavento cannot establish that correction of the record would have resulted in a different outcome since Agent Caruso testified that Spavento introduced him to Módica and Miceli for the purpose of conducting a drug transaction.[6] See Trial Tr. at 4863.
Because Spavento fails to allege facts sufficient to afford a rational inference that he received ineffective assistance of counsel, his petition is denied without a hearing thereon. See, e.g., United States v. Tarricone, 996 F.2d 1414, 1418 (2d Cir.1993).
CONCLUSION
For the reasons stated above, the instant petition shall be and hereby is dismissed. Accordingly, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.
It is SO ORDERED.

. Throughout the trial, Spavento was assisted by an Italian interpreter although the record establishes that he understood and spoke English. When Spavento testified, his counsel stated, “I request that we have an interpreter. I believe my client will be able to understand the questions, but he speaks with such a heavy accent [that] I think it would be better if an interpreter [assists].” Trial Tr. at 8467.

. Nor did any prejudice result from Spavento's decision to testify since the Court refused to penalize Spavento for his trial testimony and rejected the two point enhancement recommended in the PSR.

. To eliminate the risk of prejudice, the Court directed that the members of the jury pool receive jury cards identifying them by name and number and from the inception of the proceedings referred to them only by number.

. Both of these decisions are based upon the intent requirement added to the Guidelines after Spavento's sentencing. See Amendment 136, U.S.S.G. Manual, Appendix C, 64 (effective Nov. 1, 1989).

. The transcript at issue provides, in pertinent part:
THE COURT: That is not the question. Did you introduce Agent Caruso to Mr. Módica and/or Mr. Miceli for the purpose of assisting or facilitating in a drug transaction? That question can be answered yes or no.
THE WITNESS: They introduced each other.
sH * * * * *
THE COURT: Did you introduce him to Mr. Miceli and/or Mr. Módica and Mr. Miceli on December 3, 1987, for that purpose?
THE WITNESS: Yes, your Honor.
Trial Tr. at 9277, 9278.

. Indeed, at sentencing Spavento admitted that he had introduced Agent Caruso for the purpose of conducting a drug transaction:
He had much need La Scala. And could I introduce him to someone who could sell drugs. To his question I said, "No, I wouldn't do such a thing....” I turned him down at this point, because I didn’t like what I was doing, what was going on, because I knew it was against the law and against my moral principles, and I was certainly very stupid at this moment of my like [sic]. I should not have done such a stupid thing, and made such an awful mistake. God only knows why I did it. Maybe the Devil got into me, to make such an enormous mistake.
Sent.Tr. at 81-82.