**UNITED STATES of America,**

v.

**Charles O. SHONUBI, Defendant.**

**No. CR 92–0007.**

United States District Court,
E.D. New York.

May 20, 1997.

Zachary Carter, Brooklyn, NY by Peter A. Norling, for U.S.

---

David Secular, New York City, for Defendant.

### MEMORANDUM, ORDER AND JUDGMENT

WEINSTEIN, Senior District Judge:

I Introduction ............................. 371
II Procedural History ...................... 371
III Sentence ................................ 371
IV Guideline Injustices ..................... 372
V Avoiding Guideline Injustices................ 372
 A. Unconstitutionality .................... 372
 B. Moderating Effects of Acquitted Conduct................................. 373
 C. Changing Preponderance-of-Evidence Standard......................... 373
 D. Techniques Employed by Prosecutors and Judges.......................... 374
VI Requiring "Specific Evidence" as a Mitigation Technique ........................... 374
 A. Incompatibility with Rules of Evidence... 375
 B. Courts' Urge to do Justice.............. 375
VII Conclusion ............................... 376

## I Introduction

This cause for resentencing suggests some of the quandaries faced by trial and appellate judges in attempting to minimize the injustices and inutile cruelties required by the Sentencing Guidelines. The court of appeals' mandate requiring a reduced sentence of at least 97 months in prison must be followed. Even as reduced by the court of appeals the sentence is harsh by pre-Guideline standards. The reduction required by the court of appeals is thus desirable as a matter of policy and fairness. Unfortunately, the technique and rationale utilized by the court of appeals in justifying the result is of dubious validity.

## II Procedural History

In *United States v. Shonubi*, 802 F.Supp. 859 (E.D.N.Y.1992) (*"Shonubi I"*), the trial court found that the defendant had made eight related heroin smuggling trips; it sentenced him, based on a total estimated quantity of 3419.2 grams with a Guideline range of 151 to 188 months, to 151 months in prison. In *United States v. Shonubi*, 998 F.2d 84 (2d Cir.1993) (*"Shonubi II"*) the court of appeals concurred with the trial court's finding that defendant engaged in eight related smuggling trips—making this the law of the case—but remanded because it was not satisfied with the basis for the finding of the total amount smuggled. It held, "We agree with the District Court's factual determination that Shonubi's travel ... was part of the same course of conduct as the instant offense." *Id*, at 89.

In *United States v. Shonubi*, 895 F.Supp. 460 (E.D.N.Y.1995)(*"Shonubi III"*), after extensive evidentiary hearings and experts' reports, the trial court found the total smuggled amount to be between one to three kilograms. It resentenced the defendant to 151 months—the lowest point in the adjusted applicable Guidelines range of 151 to 188 months. In *United States v. Shonubi*, 103 F.3d 1085 (2d Cir.1997) (*"Shonubi IV"*) the court of appeals reversed and ordered that the defendant's sentence be based only on the "quantity of drugs Shonubi carried on the night of his arrest"—427.4 grams. *Id*. at 1092. Adjusted upward by two levels for perjury, as required by *Shonubi II*, this leads to a guideline range of 97 to 121 months.

## III Sentence

 Upon remand, defendant, who has no prior record and was gainfully employed, is sentenced to the lowest point in the Guideline range now required by the court of appeals, 97 months in prison. Since he has no known assets he is not fined, but is assessed $50 as required by law. A supervised release term of five years will not need to be served in this country. It is assumed that as a non-citizen, defendant will be promptly deported after the time for appeals has expired.

This shortened term of imprisonment is entirely appropriate to the crime and to the defendant even though it is based upon a radical interpretation of the Federal Rules of Evidence, the Sentencing Guidelines and the Supreme Court precedents by the court of appeals to obtain a more "just" result. Even as ameliorated, the sentence is longer than it would have been under pre-Guideline practice where excessively short or long sentences were avoided. In the Eastern District of New York, for example, three judges and the Chief Probation officer met to discuss each sentence in depth. Excessive sentences throughout the country were limited by the Parole Board's protocols on release.

Under the current Guidelines' "real-time" regime, no such mitigation is possible. Defendant cannot be paroled after serving only a portion of the sentence imposed, and reduction is limited to a maximum of fifty-four days per year for good time. See Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 235, 98 Stat. 1976, 2031–2034 (1984) (abolishing the Parole Commission); 18 U.S.C. § 3624(b).

## IV Guideline Injustices

Guideline sentences in drug cases involving couriers are often inordinately long—and substantially discriminatory in their effect on minorities—partly because, unlike other crimes where the ranges provided by the Sentencing Commission were based on statistical summaries of the way the courts sentenced in the past, drug offenses tables were unnecessarily pegged to high minimum statutory terms. *See,* Mary Pat Flaherty and Joan Biskupic, Rules Often Impose Toughest Penalties on Poor, Minorities, Wash. Post, Oct. 9, 1996, at A1. Another reason for the disturbingly long prison terms of many drug sentences is the widely condemned "relevant unconvicted conduct" provision of the Guidelines. *See* U.S.S.G. § 1B1.3. As the court of appeals noted in *Shonubi IV,*

> the Guidelines ... took the extraordinary and totally unprecedented step of punishing the relevant conduct at precisely the same degree of severity as if the defendant had been charged with and convicted of the activity constituting the "relevant conduct." No other guideline system in any of the states has instituted such an approach to punishment.

*United States v. Shonubi,* 103 F.3d 1085, 1088 (2d Cir.1997).

There is a "conviction among many judges that they are participating in an unjust procedure." Robert W. Sweet, D. Evan van Hook, and Edward V. DiLello, *Towards a Common Law of Sentencing: Developing Judicial Precedent in Cyberspace,* 65 Ford. L.Rev. 927, 935 (1996); Joan Biskupic and Mary Pat Flaherty, Loss of Discretion Fuels Frustration On Federal Bench: Most District Judges Want Shift in Sentencing Rules, Wash. Post, Oct. 8, 1996, at A1 (quoting

Judge James M. Ideman that "guidelines have substituted 'one set of injustices for another'"); *see also, e.g., United States v. Kalb,* 105 F.3d 426, 430(8th Cir.1997) (Bright, J., dissenting) (Federal judges' "dismay[ ]" at the impact of mandatory and guideline sentencing); *United States v. Ruffin,* 997 F.2d 343, 344 (7th Cir.1993) ("the Guidelines are bound to leave many judges believing that they have been instructed to impose unjust sentences"); *United States v. Baker,* 961 F.2d 1390, 1393 (8th Cir.1992) (Bright, J., concurring) ("This case is another example of rigid Guidelines producing inequity and injustice in sentencing ... "); *United States v. Silverman,* 976 F.2d 1502, 1520 (6th Cir. 1992) (Merritt, C.J., dissenting) ("The [Supreme] Court's unwillingness to confine the Sentencing Commission and its Guidelines within applicable statutory and constitutional limitations is unfortunate because of the grave injustices it allows ... ").

Most judges "strongly prefer a system in which judges are accorded more discretion than they are under the current guidelines. Judges would prefer that the guidelines be advisory or that, if they continue to be mandatory, sentencing judges be given more opportunity to exercise discretion ... " Molly Treadway Johnson & Scott Gilbert, The U.S. Sentencing Guidelines: Results of the Federal Judicial Center's 1996 Survey 3 (1997).

## V Avoiding Guideline Injustices

The Guidelines have had the unfortunate ancillary result of creating unusual tensions among and between normally collegial trial and appellate judges as they struggle to conform to a system so many consider unjust, unfair and counterproductive. In order to avoid injustices required by the Guidelines, federal courts have tried a number of techniques.

### A. Unconstitutionality

First, shortly after the Guidelines' enactment some courts declared them unconstitutional. *See, e.g., United States v. Davis,* 715 F.Supp. 1473, 1477–78 (C.D.Cal.1989) (Guidelines unconstitutional due to limitations on sentencing discretion), overruled by *United States v. Wilson,* 900 F.2d 1350 (9th Cir.

1990); *United States v. Alafriz,* 690 F.Supp. 1303, 1310–11 (S.D.N.Y.1988) (Guidelines unconstitutional as denying due process right to individualized sentence by judge), overruled by *United States v. Vizcaino,* 870 F.2d 52 (2d Cir.1989). The Supreme Court then declared the Guidelines constitutional. *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

### B. Moderating Effects of Acquitted Conduct

Second, some courts ruled that alleged offenses could not be used in enhancing penalties where the defendant had been acquitted of the offense. *See, e.g., United States v. Putra,* 78 F.3d 1386 (9th Cir.1996). The Supreme Court rejected this exception on the ground that the burden of proof for the sentencing court was less than that for the jury so that collateral estoppel would not apply. *United States v. Watts,* — U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554(1997).

The court of appeals for the Second Circuit has attempted to mitigate in acquittal cases by a different technique, permitting "a downward departure from the sentencing range calculated on the basis of acquitted conduct." *United States v. Shonubi,* 103 F.3d 1085, 1088, n. 2 (2d Cir.1997). This escape route seems dubious in light of the Supreme Court's opinion in *Watts,* which treats acquitted conduct the same way as any other conduct.

### C. Changing Preponderance–of–Evidence Standard

Third, where a relevant conduct adjustment may increase significantly the severity of a sentence, some courts have avoided the Sentencing Commission's preponderance-of-the-evidence standard for resolving disputed fact issues at sentencing. See U.S.S.G. § 6A1.3 commentary. As the court of appeals for the Second Circuit pointed out in *Shonubi IV:*

> we have ruled that a more rigorous standard should be used in determining disputed aspects of relevant conduct, where such conduct, if proven, will significantly enhance a sentence.

*United States v. Shonubi,* 103 F.3d 1085, 1089 (2d Cir.1997); *United States v. Gigante,* 94 F.3d 53, 56–57 (2d Cir.1996) ("[T]he preponderance standard is no more than a threshold basis for adjustments and departures, and the weight of the evidence, at some point along the continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures"); *see also United States v. Kikumura,* 918 F.2d 1084, 1102 (3d Cir.1990) (in circumstance involving twelve-fold upward departure "clear and convincing standard is . . . implicit" in 18 U.S.C. § 3553(b)); *United States v. Townley,* 929 F.2d 365 (8th Cir. 1991) (same); *but see, United States v. Washington,* 11 F.3d 1510, 1516 (10th Cir. 1993) ("[A]s concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit").

It is worth noting that almost a third of the judges responding to the Federal Judicial Center's 1996 survey on the Guidelines believe that "facts of conduct outside the offense of conviction should be subject to the more stringent 'clear and convincing evidence' standard." See Molly Treadway Johnson & Scott Gilbert, The U.S. Sentencing Guidelines: Results of the Federal Judicial Center's 1996 Survey 14–15 (1997). This view relates to all relevant conduct, not just those cases where the relevant conduct adjustment may increase significantly the severity of the sentence.

The approach of a variable standard for burdens of proof as to critical factual issues was common in pre-Guideline sentencing. *See United States v. Fatico,* 458 F.Supp. 388, 409 (E.D.N.Y.1978) (sliding scale for burdens of proof in sentencing depending upon the seriousness of a finding's impact), *affirmed,* 603 F.2d 1053 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). It has been widely followed in practice among judges under the Guidelines. *See* A Trial Judge's Second Impression of the Federal Sentencing Guidelines, 66 S. CAL. L. REV. 357, 360–63 (1992) (survey of judges in the Eastern and Southern Districts of New York showing that most implicitly raise the burden of proof on critical factual issues); *cf. Woodby v. Immigration and Naturaliza-*

*tion Service*, 385 U.S. 276, 286, n. 20, 87 S.Ct. 483, 488, n. 20, 17 L.Ed.2d 362 (1966) (practical flexibility of a theoretically rigid standard: "This standard of proof applies to all deportation cases, regardless of the length of time the alien has resided in this country. It is perhaps worth pointing out, however, that, as a practical matter, the more recent the alleged events supporting deportability, the more readily the government will generally be able to prove its allegations by clear, unequivocal and convincing evidence"). Jurors also often utilize a burden of proof standard that varies with the seriousness of the matter even though, technically, they are applying a unitary beyond a reasonable doubt standard. *Cf. Noto v. United States*, 367 U.S. 290, 299–300, 81 S.Ct. 1517, 1521–22, 6 L.Ed.2d 836 (1961) (membership crimes; *"strictissimi juris"*); *see Vargas v. Keane*, 86 F.3d 1273, 1281 (2d Cir.1996) (concurrence) (survey of jurors); John H. Mansfield, Norman Abrams, Margaret A. Berger, et al., Evidence, Cases and Materials 1140 (8th ed.1988).

The shifting burden of proof technique for avoiding injustice retains vitality and continued utility. Although the Supreme Court rejected characterizing a sentence enhanced on acquitted conduct as inherently exceptional, *United States v. Watts*, —— U.S. ——, ————, 117 S.Ct. 633, 637–38, 136 L.Ed.2d 554 (1997), it acknowledged "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." Noting that the case before it did not present such "exceptional" or "extreme" circumstances, the *Watts* Court declined to address this issue, thus preserving the viability of the approach. *Id.* at ————, 117 S.Ct. at 637–38; *see also McMillan v. Pennsylvania*, 477 U.S. 79, 88, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67 (1986) (preponderance standard sufficient where there is no allegation that the sentencing enhancement is "a tail which wags the dog of the substantive offense"); *see also, Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) ("The standard [of proof] serves to . . . indicate the relative importance attached to the ultimate decision"); David N.

Adair, Jr, Commentary: House Built On Weak Foundation—Sentencing Guidelines and the Preponderance Standard of Proof, 4 Fed.Sent.Rep. 292 (April/May 1992)(same).

### D. Techniques Employed by Prosecutors and Judges

Fourth, the most common methods today of successful amelioration are utilized at the prosecutorial and trial level. Reduced charges, plea agreements, stipulations as to facts, and 5K1.1 letters for substantial assistance are widely used by United States Attorneys. *See* United States Sentencing Commission, 1995 Datafile Prepared for the Eastern District of New York 11 (Aug. 1996) (substantial assistance departure was sought in 19.7% of all cases nationwide, October 1, 1994 to September 30, 1995). The sentencing court, in addition to assisting the prosecutor in arriving at sensible sentences, departs—usually downward—utilizing specific conditions of the particular case to justify a finding that the Sentencing Commission did not adequately consider defendant's or the crime's special circumstances. In most cases the prosecutor cooperates by not appealing. *Cf., e.g.,* Mark D. Harris & Douglas A. Berman, The *Koon* Case: Departures and Discretion, in Symposium on *Koon v. United States*, 9 Fed.Sent.Rep. 4, 5 (July/Aug.1996) ("[C]ourt-initiated departures have become less frequent over time because of two related developments: (1) an increase in plea agreements that do not allow either side to seek departures, and (2) skillful guideline manipulation that allows the parties to obtain the sentence they think appropriate without needing to escape the calculated guideline range"). In the instant case, neither counsel nor sentencing judge could justify an upward departure or downward adjustment.

### VI Requiring "Specific Evidence" as a Mitigation Technique

The court of appeals in *Shonubi II* and *IV* relied upon a unique method of mitigation. It required "specific evidence" to prove the "relevant conduct quantity" of drugs under the Guidelines. As it wrote in *Shonubi IV*:

"specific evidence" we required to prove a relevant-conduct quantity of drugs for pur-

poses of enhancing a sentence must be evidence that points specifically to a drug quantity for which the defendant is responsible. By mentioning "drug records" and "admissions" as examples of specific evidence we thought it reasonably clear that we were referring to the defendant—*his* admissions and records of *his* drug transactions. And by "live testimony" we were referring to testimony about *his* drug transactions.

*United States v. Shonubi,* 103 F.3d 1085, 1089–90 (2d Cir.1997) (emphasis in original).

## A. Incompatibility with Rules of Evidence

The problem with requiring a special restrictive category of evidence for sentencing purposes is that Supreme Court precedents, the United States Code, and the Federal Rules of Evidence reject this approach. *See e.g. Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949); *United States v. Watts,* —— U.S. ——, ——, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"); U.S.S.G. § 1B1.4.

The capstone provisions of the Federal Rules of Evidence are Rules 401 and 402. Rule 401 defines relevant evidence as generally as possible in terms of whether a trier would find in it any tendency to affect evaluation of the operative facts. It reads:

### Rule 401.

### DEFINITION OF "RELEVANT EVIDENCE"

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402 makes all relevant evidence admissible except as otherwise specifically provided by the Constitution, Congress, or rules adopted by the Supreme Court:

### Rule 402.

### RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

The sentencing court has the broadest discretion in determining admissibility and evaluating probative force. *See, e.g.,* FED. R.EVID. 104(a)(b), 401, 402, 403. The Federal Rules of Evidence are further explicitly broadened because they do not limit admissibility in the case of sentencing except as to privileges. *See* FED.R.EVID. 1101(d)(3).

What the Rules do not do is categorize, for exclusionary purposes, or for purposes of requiring certain evidence for certain crimes, forms of relevant evidence such as direct, circumstantial, or "specific." The new vaguely defined classification of "specific evidence" relied upon by the court of appeals in *Shonubi II* and *IV* is not only unauthorized by controlling case law and the Federal Rules of Evidence, it runs counter to our modern theory of forensic evidence. The unique Second Circuit rule represents a retrogressive step towards the practice relied upon from the Middle Ages to the late Nineteenth Century, which often limited the use and weight of evidence by category of evidence and type of case. *See United States v. Shonubi,* 895 F.Supp. 460, 492–99 (E.D.N.Y. 1995) (Part IX, the general rule favoring admissibility of, and reliance on, all helpful evidence); Essay, Some Difficulties in Determining Truth in Judicial Trials, 66 CO-LUM.L.REV. 223, 234 (1966).

The specific evidence requirement of *Shonubi I* and *IV* is a denigration of the modern evidentiary principles of free admissibility and free evaluation of probative force by the trier that is the fundamental tenet of Twentieth Century evidentiary developments based on the work of such leaders in the field of evidence as Professors James Bradley Thayer, John Henry Wigmore, Jerome Michael and Edmund M. Morgan—as well as of Con-

gress and the Supreme Court in adopting the Federal Rules of Evidence. Exclusion of evidence because it is not "specific," or giving such evidence special weight, or requiring such evidence as a basis for a finding, is not appropriate under current federal practice, absent a basis in the rules, statutes or constitution. There is no such basis for the "specific evidence" rule in sentencing cases such as *Shonubi*.

It is possible, of course, that the evidence admitted by a trial judge at a trial or sentencing will not rationally support a conclusion to the requisite degree of probability. The evaluation of probative force and conclusions drawn from the evidence must be rational and burdens of proof can be varied to provide greater protection to one side or the other. In theory, the court of appeals in *Shonubi II* and *IV* appropriately could have ruled that the sentencing court in *Shonubi I* and *III* could not rationally have reached the result it reached. The wide discretion afforded the trier in evaluating evidence, however, makes this approach somewhat unusual and difficult to justify. *See e.g., United States v. Gambino,* 59 F.3d 353, 364 (2d Cir.1995) (district court's finding of fact upheld unless clearly erroneous), *cert. denied,* — U.S. ——, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996); *Koon v. United States,* — U.S. ——, ——, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996) ("traditional sentencing discretion"). This basis for reversal, while trenching on the district court's role, does not create a dubious rule of evidence for sentencing.

For reasons of policy it is also possible to justify a rule of evidence making conviction or sentence more difficult. For example, the Constitution, Section 3 of Article III, provides that "No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court." *See also, e.g.,* Rules 413 and 414 of the Federal Rules of Evidence, adopted by Congress for reasons of special policy in sex crimes, Pub.L. 103–322 (1994). No such policy is relied upon in *Shonubi II* or *IV*.

### B. Courts' Urge to do Justice

The result required by *Shonubi IV* is compassionate, just and sensible by any accept-

able principle of sentencing. In *Shonubi II* and *IV* the court of appeals was acting in the highest tradition of the common law in seeking a just result. As Professor Karl N. Llewellyn pointed out, in appellate courts "[t]here exists, and guides and shapes the deciding, an ingrained deep-felt need, duty, and responsibility for bringing out a result which is just." Karl N. Llewellyn, The Common Law Tradition, Deciding Appeals 23 (1960); *see also, e.g., United States v. Collado,* 106 F.3d 1097 (2d Cir.1997) (interpreting statute under rule of lenity to reduce impact of out-of-jurisdiction convictions on second offender laws); *People v. Olah,* 300 N.Y. 96, 89 N.E.2d 329 (1949)(Fuld, J.)(same); *United States v. Concepcion,* 795 F.Supp. 1262 (E.D.N.Y.1992) (interpreting applicable statutes to increase discretion under Guideline regime), *rev'd sub nom. United States v. DeRiggi,* 45 F.3d 713 (2d Cir.1995). Llewellyn went on to note that "[w]hile the appellate court is bound by any reasonable finding of fact by the trier, the rule is 'colored in operation by the appellate court's duty to justice ...'" Llewellyn, The Common Law Tradition, Deciding Appeals 28; *but see id.,* at 121 (" 'Hard cases make bad law' reminds us that the thrust [toward justice] may be enough to twist an otherwise good rule out of shape").

## VII Conclusion

The attempt by the court of appeals to provide justice in *Shonubi II* and *IV* distorts the Federal Rules of Evidence. If it has any vitality at all, the "specific evidence" rule should not be extended beyond the special facts of the *Shonubi* case to limit the full use of statistical and other admissible probative evidence. Only approaches such as those in *Concepcion* or *Koon, Fatico* or *Gigante's* shifting burden of proof, or a wholesale modification of the Guideline protocols and the present sentencing statutes, can ensure just sentencing, protective of society, defendants, and the criminal justice system's symmetry.

So ordered.